IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBYN BOMAR, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| | | Civil Action No. RDB-21-870 |
| BOARD OF EDUCATION OF HARFORD COUNTY, *et al.*, | * | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiffs Robyn Bomar, Letina Hall, Jonise Stallings, and Shaker Adkins (collectively "Plaintiffs") have filed suit against the Board of Education for Harford County ("HCPS" or "School Board"), Dr. Stacey Gerringer ("Dr. Gerringer"), and Dr. Sean Bulson ("Dr. Bulson"), asserting claims under 42 U.S.C. § 1983; the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, § 20-601, *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.*; and for common law intentional misrepresentation.[1]  (ECF No. 1 ¶ 1.) In the first of eleven counts in the Complaint, the Plaintiffs claim common law fraud and intentional misrepresentation against Dr. Gerringer.  In the second count, they claim constitutional violations against Dr. Bulson.  In the remaining nine counts, the Plaintiffs make

---

[1] This Court has federal question jurisdiction over the Plaintiffs' Title VII, ADEA, and FMLA claims pursuant to 28 U.S.C. § 1331 and will exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

1

claims of racial, sexual, and age discrimination and retaliation against the School Board. These claims arise out of their demotion from positions as Assistant Principals for Harford County Public Schools. (*Id.* ¶ 2.) They seek declaratory relief, back pay, front pay, compensatory and general damages, punitive damages, reasonable attorneys' fees, costs, and expenses. (*Id.*)

While the School Board has filed an Answer, Defendants Dr. Gerringer and Dr. Bulson now seek dismissal of the claims against them. Presently pending is Dr. Gerringer's Motion to Dismiss (ECF No. 12) through which she seeks dismissal of the claim for intentional misrepresentation asserted only against her in Count I. Also pending is Dr. Bulson's Motion to Dismiss (ECF No. 14) through which he seeks dismissal of a claim under 42 U.S.C. § 1983 for constitutional violations only asserted against him in Count II. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendant Dr. Bulson's Motion to Dismiss (ECF No. 14) is DENIED. However, Dr. Gerringer's Motion to Dismiss (ECF No. 12) is GRANTED and Count I is DISMISSED WITH PREJUDICE. The gravamen of the Plaintiffs' claim against Dr. Gerringer is quite simply an alleged failure to adequately represent their interests. This is a labor dispute over which this Court lacks jurisdiction. The great emphasis placed by the Plaintiffs with respect to an association of public school administrators and its corporate charter is of no legal effect. As a matter of Maryland law, the School Board has the authority to designate the labor representative for the Plaintiffs.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found.*

2

*v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiffs Bomar, Hall, Stallings, and Adkins each allege that at all relevant times to this matter, they were African American, above the age of forty, female in sex and gender, and employed by Defendant Board of Education for Harford County ("HCPS" or "School Board"). (ECF No. 1 ¶¶ 5-8.) All four women held positions as Assistant Principals. (*Id.* ¶ 29.) The Plaintiffs allege that despite their exceptional performance throughout their tenures as HCPS employees, (*id.* ¶¶ 66, 73, 95, 108, 162), in or around April 2019, they were each demoted from their Assistant Principal positions as part of a reduction in force ("RIF") while other Caucasian male and female individuals retained their Assistant Principal positions or were promoted to such positions, (*id.* ¶¶ 105, 121, 128, 164, 179).

At the time of their demotions, the Plaintiffs were dues-paying members of the Association of Public School Administrators and Supervisors of Harford County ("APSASHC"), which represented both Assistant Principals and Principals employed by the county. (*Id.* ¶¶ 29, 31.) APSASHC filed articles of incorporation with the State of Maryland on April 10, 2012. (*Id.* ¶ 25.) On October 1, 2015, the Maryland State Department of Assessment and Taxation placed APSASHC in "Forfeiture" status. (*Id.* ¶ 27.) At all times relevant to this matter, Defendant Dr. Gerringer was allegedly serving as the President of APSASHC. (*Id.* ¶ 11.) The Plaintiffs allege that she was aware that APSASHC had forfeited its corporate charter and failed to communicate the entity's forfeiture to the organization's members. (*Id.* ¶ 28.) During the relevant time period, Dr. Gerringer was employed by HCPS as the Principal of Abingdon Elementary School. (*Id.* ¶ 11.)

Despite the forfeiture of APSASHC's corporate status in 2015, on July 1, 2018 the School Board entered into a "Negotiated Agreement" with it, recognizing the organization as the "exclusive representative of the administrators and supervisors in the school system." (*Id.* ¶ 31.) The Negotiated Agreement also limited Principals' ability to influence the appointment of Assistant Principals: the Principals were permitted "to provide input into any potential appointment of a subordinate administrator," but such input was "limited to the specific leadership characteristics [and] [s]pecific names of potential candidates [would] not be included." (*Id.* ¶ 34.) Final decisions as to the assignment of Assistant Principals were to be made by the Superintendent. (*Id.*) Defendant Dr. Bulson was serving as the Superintendent at that time. (*Id.* ¶ 30.)

On or around December 11 and December 13, 2018, the School Board Amended its "Reduction In Force" ("RIF") procedures for its administrative and supervisory personnel. (*Id.* ¶ 38.) According to those amended procedures, the Superintendent was tasked with identifying which positions could be reduced or eliminated. (*Id.*) The procedures also provided certain factors for consideration in making decisions regarding the reduction or elimination of positions, including "qualifications, work performance, and length of service." (*Id.* ¶ 39.)

On December 12, 2018, Defendant Dr. Gerringer sent an e-mail to APSASHC members, explaining that HCPS would be reducing its administrative force by approximately $3,000,000 and attached the amended RIF procedures to the e-mail. (*Id.* ¶ 43.) In that e-mail, Dr. Gerringer did not disclose to purported APSASHC members that the organization had forfeited its corporate charter. (*Id.* ¶ 42.) On December 14, 2018, the School Board then held

4

a meeting exclusively for its Principals at which they were informed that the RIF process would include Assistant Principals. (*Id.* ¶ 44.) A few days later, a faculty meeting was held to share information about the personnel who would be impacted by the RIF. (*Id.* ¶ 46.) At that time, the School Board revealed that Assistant Principals would be required to re-apply for their positions and that some Assistant Principals would be demoted. (*Id.* ¶ 48.)

On January 7, 2019, Dr. Gerringer and HCPS Human Resources representatives conducted a presentation and informed HCPS administrators, all members of APSASHC, that to re-apply for their positions, all Assistant Principals would need to submit a resume, written application, a reference from the candidate's supervisor, and a video interview. (*Id.* ¶ 52.) At this time, Dr. Gerringer also announced that individuals who were not already serving as Assistant Principals would be invited to apply. (*Id.*) Individuals who were not selected for the new Assistant Principal positions would be demoted to classroom teaching assignments at reduced pay, placed in the Assistant Principal pool, and would be up for consideration for any vacancies in the next three years. (*Id.* ¶ 53.) At the meeting, Dr. Gerringer and HCPS Human Resources explained the process they would use for selection of Assistant Principals, which would involve Principals selecting their "Top 5" applicants from the top seventy-five candidates. (*Id.* ¶ 56.) The Plaintiffs contend that although this procedure violated the new RIF procedures, as well as the Negotiated Agreement, Dr. Gerringer did nothing to challenge the School Board's decisions. (*Id.* ¶¶ 57-58.) In short, they contend that she did not adequately represent them.

At a School Board meeting on March 25, 2019, Dr. Gerringer asked the School Board to increase its budget request to the county by $5 million in order to add teaching positions.

(*Id.* ¶ 64.)  The Plaintiffs allege that such a request was not in the interest of APSASHC members—they allege that Dr. Gerringer pushed for teaching positions instead of pushing the county to restore APSASHC members who were to be demoted.  (*Id.*)  Overall, the Plaintiffs allege that Dr. Gerringer knowingly and intentionally refused to negotiate or advocate on behalf of the Plaintiffs throughout the RIF process, all the while failing to disclosure that APSASHC had forfeited its status as a corporation under Maryland law.  (*Id.* ¶¶ 42, 50, 63, 65.)

In or around April 2019, all four Plaintiffs were selected for demotions.  (*Id.* ¶¶ 121, 128.)  According to the Plaintiffs, they were replaced by individuals who were white, younger, and less qualified than the Plaintiffs.  (*Id.* ¶¶ 113-118.)  Specifically, the School Board promoted eight Caucasian females who had no Assistant Principal experience.  (*Id.* ¶ 115.)  At least fourteen of the individuals who were retained or promoted to Assistant Principal were under the age of forty.  (*Id.* ¶ 116.)  Seventy-nine Caucasian Assistant Principals re-applied for their positions, and only five were denied and demoted.  (*Id.* ¶¶ 117-118.)  On the other hand, four of five female, African American Assistant Principals who re-applied for their positions were demoted.  (*Id.* ¶¶ 119-120.)  Plaintiff Adkins specifically alleges that her duties were reassigned to a Caucasian male.  (*Id.* ¶ 105.)  All four Plaintiffs also generally allege that "HCPS replaced Plaintiffs with Caucasian and male candidates who were less qualified than Plaintiffs."  (*Id.* ¶¶ 164, 179, 191, 204, 218, 273, 293.)

On April 30, 2019, Superintendent Dr. Bulson met with the Harford County Chapter of the Caucus of African American Leaders.  (*Id.* ¶ 125.)  The Caucus expressed to Dr. Bulson that the HCPS decision to demote 80% of its African American Female Assistant Principals seemed discriminatory, that the Plaintiffs were highly qualified for their positions, and that it

6

did not appear that the demotions were based upon any legitimate factors or any existing School Board policy. (*Id.* ¶ 126.) Dr. Bulson allegedly told the Caucus representatives that the process the county used was appropriate because it empowered Principals to render final decisions on the administrators they supervised. (*Id.* ¶ 127.) It was Dr. Bulson who ultimately authorized the Plaintiffs' demotion from their positions as Assistant Principals and authorized the appointment of the Caucasian women and men, even after he allegedly became aware that the process discriminated against the Plaintiffs. (*Id.* ¶ 128.)

In 2020, Harford County reported a budget surplus. (*Id.* ¶ 135.) However, Dr. Bulson and the School Board still did not restore the Plaintiffs to their Assistant Principal positions. (*Id.*) As of June 2021, all four Plaintiffs have not been selected from the pool of candidates for Assistant Principal positions. (ECF No. 21 at 3.)

In June 2019, the Plaintiffs filed complaints for discrimination with the Department of Education's Office of Civil Rights, which referred the matter to the Maryland Commission for Civil Rights ("MCCR"). (ECF No. 1 ¶ 130.) In or around March 2021, the Plaintiffs were issued Notices of Right to Sue. (*Id.* ¶ 12.) On April 6, 2021, the Plaintiffs filed the eleven-count Complaint in this matter naming the Harford County Board of Education, Dr. Gerringer, and Dr. Bulson as Defendants. Count I asserts a claim for fraud/intentional misrepresentation against Defendant Dr. Gerringer due to the forfeiture of APSASHC's corporate status. (*Id.* ¶¶ 138-159.) The Plaintiffs assert that Dr. Gerringer intentionally, or with a reckless inference as to the truth, mislead Plaintiffs to believe that she was authorized to negotiate on behalf of the Plaintiffs and that she intended to represent and advocate on their behalf when she in fact had no intent to negotiate, represent, or advocate in good faith

with respect to the 2018 Negotiated Agreement, the 2019 RIF, and the decision of HCPS to demote all four Plaintiffs.  (*Id.* ¶ 145.)  In Count II, the Plaintiffs allege violation of 42 U.S.C. § 1983 against "Sean Bulson in his Individual Capacity" on the basis of his decision to demote the Plaintiffs based on their race, age, and sex, rather than their past performance, tenure, qualifications, or any legitimate criteria.  (*Id.* ¶¶ 160-69.)  They allege that their demotions based on their race were in violation of their rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, and that Dr. Buslon continues to violate their rights by failing to restore them to their Assistant Principal positions even after Harford County reported a budget surplus in 2020 and additional positions became available.  (*Id.* ¶ 166.)  The remaining nine counts are alleged against Defendant HCPS, which timely filed an answer to this Complaint.  (*Id.* ¶¶ 170-302.)

On May 18, 2021, Defendant Dr. Gerringer filed a Motion to Dismiss (ECF No. 12), seeking dismissal of Count I and arguing that APSASHC retained the exclusive authority to represent the Plaintiffs regardless of its corporate status.  The next day, Defendant Dr. Bulson also filed a Motion to Dismiss (ECF No. 14), seeking dismissal of Count II and arguing that the Plaintiffs cannot bring a claim under § 1983 against him in his official capacity, or in the alternative, that he is entitled to qualified immunity.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is

"to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### I. Claim Against Dr. Gerringer

In Count I of the Complaint, the Plaintiffs assert a claim for intentional misrepresentation (fraud) against Defendant Dr. Gerringer.  (ECF No. 1 ¶¶ 138-59.)  To recover for a claim of fraud or intentional misrepresentation under Maryland law, a plaintiff

9

must generally show that: (1) "the defendant made a false representation to the plaintiff;" (2) "its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;" (3) "the misrepresentation was made for the purpose of defrauding the plaintiff;" (4) "the plaintiff relied on the misrepresentation and had the right to rely on it;" and (5) "the plaintiff suffered compensable injury resulting from the misrepresentation." *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994). To succeed on their intentional misrepresentation claim asserted in Count I of the Complaint, the Plaintiffs must satisfy the heightened pleading standard for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) requires that "a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). A failure to comply with this rule is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783, n.5 (4th Cir. 1999). With respect to the knowledge or scienter elements of the intentional misrepresentation cause of action, the United States Court of Appeals for the Fourth Circuit has noted that "Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of the defendant's intent to deceive." *Harrison*, 176 F.3d at 784 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (2d ed. 1990)).

In their Complaint, the Plaintiffs allege when APSASHC forfeited its status as a corporation under Maryland law in October of 2015, the organization relinquished its right to conduct business in the State of Maryland and accordingly "ha[d] no right to use its name." (ECF No. 1 ¶ 27.)  In other words, APSASHC, as a domestic corporation, had "no existence under the laws of the State of Maryland." (*Id.*)  The Plaintiffs allege that, by extension, Dr. Gerringer had no authority to enter into the 2018 Negotiated Agreement, negotiate on the Plaintiffs' behalf with the School Board, or generally represent herself as the President of APSASHC.  (*Id.* ¶ 147.)  The Plaintiffs claim that in failing to disclose the forfeiture and continuing to act as President of the organization, Dr. Gerringer intentionally, or with a reckless disregard as to the truth, misled the Plaintiffs to believe that she was authorized to negotiate on their behalf, intended to represent and advocate for them, when in reality she lacked both the authority and the intention of actually negotiating, representing, or advocating for them in good faith with respect to the Negotiated Agreement, the RIF, and the School Board's demotion decisions.  (*Id.* ¶¶ 145, 147, 152, 155.)  In short, the Plaintiffs' claim against Dr. Gerringer is based on the loss of the corporate status of APSASHC in 2015.  This simply had no effect on the authority of the School Board in 2018 to still recognize this organization as the exclusive representative of administrators and supervisors in the Harford County school system.

Seeking dismissal of the Plaintiffs' intentional misrepresentation claim, Dr. Gerringer contends that despite the Plaintiffs' allegations, she remained the President of APSASHC at the time of the Negotiated Agreement and RIF, that that APSASHC existed and had the authority to represent its members with or without the corporate charter in 2018 and 2019.

11

(ECF No 12-1 at 3.)  APSASHC was, as the Plaintiffs concede, the exclusive bargaining unit of supervisors and administrators recognized by the School Board.  (*Id.* at 13 (citing ECF No. 1 ¶¶ 26, 31, 140, 143).)  Such authority derived itself from the Education Article of the Maryland Code, which permits a county school board to designate an exclusive employee organization without any explicit requirement that such organization be incorporated with the state.  *See* Md. Code Ann., Educ. § 6-404, 6-407.  The Code authorizes the county board to select an organization to negotiate "on all matters that relate to salaries, wages, hours, and other working conditions, including procedures regarding employee transfers and assignments," "confer in good faith" with the county, "honor and administer existing agreements," and reduce negotiations to a final written agreement.  *See id.* §§ 6-407, 408.

Dr. Gerringer aptly notes that any representations that she was the President of APSASHC or was acting on behalf of the Plaintiffs in her capacity as the leader of the organization were in fact true, and by extension, the Plaintiffs could not have been harmed by her conduct.  Since APSASHC was the exclusive representative for HCPS administrators, the Plaintiffs lacked any right to choose a different representative or negotiate on their own behalf.  (ECF No. 12-1 at 18.)  She points to the Plaintiffs' own allegations of APSASHC's continued functioning and work negotiating with the School Board as evidence of the organization's legitimacy and authority.  (*Id.* at 16-17.)

Dr. Gerringer also contends that the Plaintiffs have filed this claim for intentional misrepresentation against her because they know that a claim for failure to provide fair representation related to conduct in 2018 and 2019 is not viable at this time.  (*Id.* at 8-10.)  She asserts that the Plaintiffs' "true contention" is that APSASHC did not do enough to protect

their jobs: the Plaintiffs seems to believe that if APSASHC had tried to enforce the RIF and Negotiated Agreement procedures and pushed for more Assistant Principal positions instead of teaching positions, they may not have been demoted from their Assistant Principal jobs. (*Id.* at 9.) In *Mayo v. Board of Education of Prince George's County*, Judge Motz of this Court held that a claim for fair representation under Maryland law is subject to a limitations period of 90 days, and that in order to assert a viable fair representation claim in court, a plaintiff is required to exhaust her administrative remedies by first submitting a claim to Maryland's Public School Labor Relations Board ("PSLRB"). 797 F. Supp. 2d 685, 690 (D. Md. 2011) (citing Md. Code Regs. 14.32.05.01 and *Offutt v. Montgomery Cnty. Bd. of Educ.*, 404 A.2d 281, 284 (Md. 1979)). As the Plaintiffs filed this case well over ninety days following any alleged failure to provide fair representation and there are no allegations that they exhausted administrative remedies with the PSLRB as required, any claim for failure to fairly represent is not viable at this time.

Nevertheless, the Plaintiffs have not and cannot allege that Dr. Gerringer's representations were in fact false and capable of causing them harm and, therefore, have failed "to state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). There is no basis to allege a false representation when in fact Dr. Gerringer was recognized by the School Board as the APSASHC representative despite its lack of corporate status. The corporate status or lack thereof in no way establishes the basis for a fraud allegation in this case. Accordingly, Dr. Gerringer's Motion to Dismiss (ECF No. 12) will be GRANTED and Count I will be DISMISSED WITH PREJUDICE.

**II. Claim Against Dr. Bulson**

In Count II of the Complaint, the Plaintiffs allege that Dr. Bulson deprived them of their rights under the Equal Protection Clause of the U.S. Constitution in violation of 42 U.S.C. § 1983. (ECF No. 1 ¶¶ 160-69.) Under Section 1983, a plaintiff may file suit against any person, who acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that: (1) a right conferred by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). In *Hafer v. Melo*, the United States Supreme Court held that state officials sued in their individual capacities are "persons" for purposes of Section 1983. 502 U.S. 21, 23 (1991). However, state officials cannot be sued in their *official* capacities. "Although state officials are literally persons, 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.'" *McIntosh v. Div. of Corr.*, No. PWG-16-1320, 2017 WL 3412081, at *4 (D. Md. Aug. 7, 2017) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted)). The Eleventh Amendment to the U.S. Constitution bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

Defendant Dr. Bulson contends that Count II should be dismissed because although the Complaint purportedly asserts a single claim against him in his individual capacity, the

14

allegations in the Complaint describe conduct which, if true, could only give rise to an official capacity claim that is not cognizable as a matter of law. (ECF No. 14-1 at 1.) In doing so, Dr. Bulson points to the Fourth Circuit's decision in *Biggs v. Meadows*, in which the Court laid out what has become known as the "course of proceedings" test which is used to determine whether a plaintiff has asserted a Section 1983 claim against a state official in his official or individual capacity. 66 F.3d 56 (4th Cir. 1995). However, this test is not employed each time a plaintiff files suit against a state official. As the Fourth Circuit clearly stated in the *Biggs* opinion, the test is to be applied "when a plaintiff does not allege capacity specifically." *Id.* at 61. The test is employed where plaintiffs fail to allege whether they are bringing their claims against a state official in his individual or official capacity. *See, e.g.*, *Victors v. Kronmiller*, 553 F. Supp. 2d 533, 545 (D. Md. 2008); *Hyde v. Maryland State Bd. of Dental Examiners*, No. ELH-16-2489, 2018 WL 5786114, *10-*11 (D. Md. Nov. 5, 2018). Defendant Dr. Bulson has been unable to point to any cases in which courts have used the "course of proceedings test" to hold an official is being sued in his official capacity where the plaintiff has explicitly alleged the contrary. Such a ruling would be contrary to the purpose of the test, for which "the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be fairly ascertained." *Briggs*, 66 F.3d 61.

In this case, the Plaintiffs explicitly seek to hold Defendant Dr. Bulson liable in his individual capacity. Their Complaint alleges that Dr. Bulson personally refused to enforce the School Board's RIF procedures and 2018 Negotiated Agreement (ECF No. 1 ¶¶ 40, 161) and selectively demoted all four Plaintiffs based on their race and sex (*id.* ¶¶ 125-128, 162) in violation of the Equal Protection Clause. At this stage in the proceedings, they have stated a

plausible claim for relief. They have sufficiently alleged that Dr. Bulson personally violated their constitutional rights.

Alternatively, Dr. Bulson seeks dismissal arguing that he is entitled to qualified immunity. Qualified immunity affords government officers protection from suits for monetary damages when the officers have acted in good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This brand of immunity is "an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow*, 457 U.S. at 818 (1982). The doctrine is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law." *Occupy Columbia*, 738 F.3d at 118. Thus, qualified immunity shields government officials from Section 1983 claims unless "(1) the allegations underlying the claim, if true, substantiate a violation of federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Id.* The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Nonetheless, "qualified immunity . . . will be upheld on a [Rule] 12(b)(6) motion only when the immunity is established on the face of the complaint," *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir.1996), and the court must "examine the facts alleged by the plaintiff, not those asserted by the defendant." *Buonocore v. Harris*, 65 F.3d 347, 357 (4th Cir. 1995).

In this case, the Plaintiffs allege that Dr. Bulson demoted them because of their race and sex, despite their exceptional performances in their time with HCPS.  (ECF No. 1 ¶¶ 66, 73, 95, 103, 121, 126, 162, 165.)  The Plaintiffs have also alleged that they were each replaced by Caucasian female and male employees who were less qualified for Assistant Principal positions.  (*Id.* ¶¶ 115, 117, 118, 121, 164.)  They specifically allege that eight Caucasian women who possessed no Assistant Principal experience were appointed to Assistant Principal positions while four of the five female, African American applicants who re-applied were demoted.  (*Id.* ¶¶ 117, 119.)  Dr. Bulson allegedly claimed that the demotion process was appropriate because it empowered Principals to make the demotion decisions, which the Plaintiffs argue was contrary to the RIF procedures and Negotiated Agreement.  (*Id.* ¶ 127.)  Dr. Bulson is also accused of refusing to restore the Plaintiffs to their positions even though the county has since accumulated a budget surplus.  (*Id.* ¶¶ 127, 128, 129.)  "There is no ambiguity surrounding the constitutional right to be free from discrimination on the basis of gender or race . . . ."  *Greenan v. Board of Educ. of Worcester Cnty.*, 783 F. Supp. 2d 782, 791 (D. Md. 2011).  At this stage of the proceedings, it cannot be said that Dr. Bulson's "immunity is established on the face of the complaint."  *See Hafley*, 90 F.3d at 266.  The Plaintiffs' claim against Dr. Bulson in his individual capacity will proceed to discovery.

## CONCLUSION

For the foregoing reasons, Defendant Dr. Gerringer's Motion to Dismiss (ECF No. 12) is GRANTED.  Count I of the Complaint (ECF No.1) is DISMISSED WITH PREJUDICE.  Defendant Dr. Bulson's Motion to Dismiss (ECF No. 14) is DENIED.

A separate Order follows.

Dated: July 20, 2021

_____/s/_____
Richard D. Bennett
United States District Judge