IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBYN BOMAR, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| | | Civil Action No. RDB-21-870 |
| BOARD OF EDUCATION OF | * | |
| HARFORD COUNTY, *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Plaintiffs Robyn Bomar, Letina Hall, Jonise Stallings, and Shakera Adkins (collectively "Plaintiffs") brought a series of civil rights, employment discrimination, and Maryland tort law claims against the Board of Education for Harford County ("HCPS" or "Board"), Dr. Stacey Gerringer ("Dr. Gerringer"), and Dr. Sean Bulson ("Dr. Bulson"). (Compl., ECF No. 1 ¶1.) On July 20, 2021, this Court entered its Memorandum Opinion and Order granting Dr. Gerringer's Motion to Dismiss while denying a parallel Motion to Dismiss filed by Dr. Bulson. (ECF Nos. 23, 24.). Count I of the Complaint was dismissed with prejudice and Dr. Gerringer was terminated as a Defendant.[1] On August 17, 2021, Plaintiffs filed the pending "Motion to Reconsider Dismissal of Stacey Gerringer." (ECF No. 29.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated herein, Plaintiffs' Motion to Reconsider (ECF No. 33) is DENIED.

---

[1] As Dr. Bulson's Motion to Dismiss was denied, (ECF Nos. 23, 24), Dr. Bulson and HCPS remain active as Defendants in this case.

## BACKGROUND

On April 6, 2021, Plaintiffs Robyn Bomar, Letina Hall, Jonise Stallings, and Shakera Adkins filed an eleven-count Complaint in this Court, naming the Harford County Board of Education, Dr. Gerringer, and Dr. Bulson as Defendants. (Compl., ECF No. 1.) The Complaint alleges that the Defendants discriminated against Plaintiffs on the basis of race, age, and sex by demoting them from their Assistant Principal positions during a Reduction in Force despite exceptional performance, while treating similarly situated Caucasian and male employees more favorably. (*Id.* ¶¶ 66, 73, 95, 105, 108, 121, 128, 162, 164, 179.) Count I of the Complaint brings fraudulent and intentional misrepresentation claims against Dr. Gerringer, asserting she represented herself as President of the Association of Public School Administrators and Supervisors of Harford County ("the Association") despite the forfeiture of the Association's corporate charter on October 1, 2015. (*Id.* ¶¶ 27, 42–48, 138–159.) Plaintiffs argue that Dr. Gerringer misled them to believe she could represent them during the process that led to their demotion, and that she failed to negotiate in good faith on their behalf. (*Id.* ¶ 145.)

On May 18, 2021, Dr. Gerringer filed a Motion to Dismiss Count I of the Complaint, arguing that the Association had exclusive authority to represent the Plaintiffs notwithstanding its forfeiture. (Mem. in Supp., ECF No. 21-1 at 3.) This Court determined that Plaintiffs "have not and cannot allege that Dr. Gerringer's representations were false and capable of causing them harm," as HCPS had designated the Association the exclusive bargaining unit for school administrators under the Education Article of the Maryland Code, which permits public school employers to designate employee organizations for collective bargaining without regard

to their corporate status. *See* Md. Code Ann., Educ. §§ 6-404, 6-407. Accordingly, on July 20, 2021, this Court granted Dr. Gerringer's Motion to Dismiss and dismissed the claims against her with prejudice. (ECF Nos. 23, 24.) Plaintiffs now seek reconsideration of this Court's Order. (ECF No. 29.)

## STANDARD OF REVIEW

Plaintiffs do not cite which Federal Rule of Civil Procedure they invoke as grounds for reconsideration. Two rules enable a court to reconsider a final judgment: Rule 59(e) authorizes a district court to alter, amend, or vacate a prior judgment, while Rule 60 provides for relief from judgment. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 n.4 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 115 (2011). As this Court explained in *Cross v. Fleet Reserve Ass'n Pension Plan*, WDQ-05-0001, 2010 WL 3609530, at *2 (D. Md. Sept. 14, 2010):

> A party may move to alter or amend a judgment under Rule 59(e), or for relief from a judgment under Rule 60(b). *See* Fed. R. Civ. P. 59(e) & 60(b). A motion to alter or amend filed within 28 days of the judgment is analyzed under Rule 59(e); if the motion is filed later, Rule 60(b) controls. *See* Fed. R. Civ. P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008); *In re Burnley*, 988 F.2d 1, 2-3 (4th Cir. 1992).

(footnote omitted).  Plaintiffs filed their motion on August 17, 2021, exactly 28 days following this Court's July 20, 2021 Order granting Defendants' Motion to Dismiss. (ECF No. 24.)[2] Accordingly, Rule 59(e) governs this Court's analysis. *See, e.g.*, *Knott v. Wedgwood*, DKC-13-2486, 2014 WL 4660811, at *2 (D. Md. Sept. 11, 2014) ("Although Plaintiff purports to bring his motion for reconsideration under Rule 60(b)(1), because it was filed within twenty-eight days of entry of the underlying order, it is properly analyzed under Rule 59(e).").

---

[2] Rule 6 directs this Court to "exclude the day of the event that triggers the period," Fed. R. Civ. P. 6(a)(1)(A), rendering Plaintiffs' motion timely under Rule 59(e).

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a final judgment[3] may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See, e.g., Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008); *see also Fleming v. Maryland Nat'l Cap. Park & Panning Comm'n*, DKC-11-2769, 2012 WL 12877387, at *1 (D. Md. Mar. 8, 2012). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Kelly v. Simpson*, RDB-16-4067, 2017 WL 4065820, at *1 (D. Md. Jan. 26, 2017). Additionally, "[t]he district court has considerable discretion in deciding whether to modify or amend a judgment." *Fleming*, 2012 WL 12877387, at *1.

## ANALYSIS

Plaintiffs have not met "the high bar . . . to succeed on a Motion for Reconsideration." *Harvey v. Cable News Network, Inc.*, No. RDB-20-3068, 2021 WL 1516009, *2 (D. Md. Apr. 16, 2021). Plaintiffs do not allege that there has been an intervening change in controlling law, or that any new evidence has been discovered since this Court's original ruling. Instead, they repeat the facts and legal contentions set forth in their Complaint against Dr. Gerringer and reiterate their claim that the Complaint sufficiently pleads fraud. (*See* Mem. in Supp., at 1–5.)

---

[3] Rule 59(e) applies only to final judgments. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991).

To the extent Plaintiffs are simply "relitigating" Defendant's Motion to Dismiss, this is not an appropriate use of Rule 59(e).

However, Plaintiffs also contend that this Court's opinion rests on a misinterpretation of Maryland's corporate forfeiture statutes. *See Pacific Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 403 (4th Cir. 1998) (holding that a judgment may be altered "to correct a clear error of law"); *accord Gagliano*, 547 F.3d 230, 241 n.8 (4th Cir. 2008). Accordingly, this Court will address the merits of the Plaintiffs' argument.

To state a claim for fraudulent or intentional misrepresentation under Maryland law, a plaintiff must show that:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005) (citing *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994)); *accord Jewell v. Md. Real Estate Comm'n*, No. 2603, Sept. Term 2019, 2021 WL 1235836, at *10 (Md. Ct. Spec. App. Apr. 2, 2021). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). While Rule 9 "does not require the elucidation of every detail of the alleged fraud," *Mylan Labs v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991), a plaintiff claiming fraud must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). A defendant's knowledge and intent may be alleged generally. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The crux of Plaintiffs' claim is that Dr. Gerringer misled them to believe that she could negotiate with the Board, depriving them "of the opportunity to seek union representation from an organization which would operate legally and seek to enforce the existing contracts." (Compl. ¶ 145; Mem. in Supp., at 5–6.) Per Plaintiffs, Dr. Gerringer falsely represented herself as President of the Association and engaged in contract negotiations without authority to do so, having actual and imputed knowledge that the Association corporate charter was forfeit. (Compl. ¶¶ 27, 42–48; Mem. in Supp., at 5–8.) Plaintiffs claim they relied on these statements when they allowed Dr. Gerringer to represent them, and that they were consequently harmed by her failure to provide adequate representation. (Compl. ¶¶ 27, 154; Mem. in Supp., at 8). These arguments fall short.

It is true that the Association lost its corporate entity status when its charter was forfeited. "'Under Maryland law, once a corporation's charter is revoked and forfeited, the corporation ceases to exist as a legal entity.'" *Maryland v. Exxon Mobil Corp.*, 352 F. Supp. 3d 435, 469 (D. Md. 2018) (citing *Scott v. Seek Lane Venture, Inc.*, 605 A.2d 942, 950 (Md. Ct. Spec. App. 1992)). Once a corporation's legal existence has been terminated, "the powers conferred by law on the corporation[] are inoperative, null, and void." *Auto USA, Inc. v. DHL Express (USA), Inc.*, No. CV ELH-16-3580, 2017 WL 839525, at *4 (D. Md. Mar. 3, 2017) (quoting *Tri-Cnty. Unlimited, Inc. v. Kids First Swim Sch. Inc.*, 993 A.2d 146, 150, *cert. denied*, 997 A.2d 792 (2010)); *see also Brown v. M St. Five, LLC*, 56 A.3d 765, 770–71 (D.C. 2012) (observing that, under Maryland law, "when a corporation has forfeited its charter, it loses the power to contract."). Moreover, as "the corporate existence terminates upon forfeiture, . . . the corporate officers, as officers, are devoid of authority to act for the corporation." *Cloverfields*

*Imp. Ass'n, Inc. v. Seabreeze Props., Inc.*, 362 A.2d 675, 679 (Md. Ct. Spec. App. 1976). And "unless there is clear evidence to the contrary, a person who was an officer or director of a corporation at the time its charter was forfeited is presumed to know of the forfeiture." Md. Code, Corp. & Ass'n § 3-514(b).

However, Dr. Gerringer's authority to negotiate on Plaintiffs' behalf is granted by the Education Article of the Maryland Code—it is not conferred by the Association's charter. The Education Article allows public school employees to create "employee organizations" for collective bargaining. *See* Md. Code, Educ. § 6-402(a). These organizations are not required to incorporate: The Code only defines an "employee organization" as "an organization that: (1) [i]ncludes certificated employees of a public school employer . . . and (2) [h]as as one of its main purposes the representation of the employees in their relations with that . . . employer." Md. Code, Educ. § 6-401(c); *accord Pinsky v. Pikesville Recreation Council*, 78 A.3d 471, 481 (Md. Ct. Spec. App. 2013) (noting that "labor and trade unions are . . . frequently unincorporated."). Their power to negotiate does not depend on the corporate form—instead, a school employer may designate an employee organization as the exclusive representative of employees within its unit. Md. Code, Educ. §§ 6-404(a); 6-405. Once an employer has made this designation, the organization becomes "the negotiating agent of all public school employees in the unit" and "is charged with statutory rights and fiduciary duties to negotiate for, and to act in the best interests of, the public school employees." *Id.* § 6-407(b)(1); *Balt. Teachers Union v. Md. State Bd. of Educ.*, 840 A.2d 728, 731 (Md. 2004).

As the foregoing makes clear, the forfeiture of the Association's charter has no bearing on Dr. Gerringer's authority to negotiate on Plaintiffs' behalf. The Association has been

designated the exclusive representative for public school administrators in Harford County. That designation grants the Association—and Dr. Gerringer as its representative—the power, the obligation, and the strict fiduciary duty to represent Harford County school administrators in all matters "that relate to salaries, wages, hours, and other working conditions." Md. Code, Educ. §§ 6-402(a), 6-407(b)(1), (c). It would be illogical—and contrary to the purpose of the collective bargaining statute—to divest the Association of these rights and responsibilities based on the forfeiture of its charter when incorporation is neither a requirement nor a consideration for designation under the Education Article. Accordingly, Dr. Gerringer's statements appear to be accurate.

Even assuming that Dr. Gerringer's statements were false, and made with knowledge of their falsehood, Plaintiffs cannot establish the reliance and causation elements of their claim. As discussed above, a public-school employer may designate an employee organization as the "exclusive representative of all public school employees in a specified unit in the county." *Id.* §§ 6-404(a); 6-405. Once so designated, an employee organization retains exclusive bargaining rights until the employer selects another organization—requiring a petition signed by more than 20 percent of the public-school employees within the specified unit, at least two years following the initial designation. Md. Code, Educ. § 6-406. The employer is then required to negotiate with the exclusive bargaining organization on all matters "that relate to salaries, wages, hours, and other working conditions." Md. Code, Educ. §§ 6-402(a), 6-407(b)(1), (c); *see also Montgomery Cnty. Educ. Ass'n, Inc. v. Bd. of Educ.*, 534 A.2d 980, 985 (Md. 1987) ("If a subject falls within the provision, the language of the statute makes it a mandatory subject of collective bargaining.").

Plaintiffs claim they relied on Dr. Gerringer's putative misrepresentations by allowing her to negotiate on their behalf—and that absent these representations, they "would not have permitted Dr. Gerringer to represent them" and "would not have permitted Dr. Gerringer to enter into a Negotiated Agreement." (Compl. ¶¶ 157–58.) However, the Association had been designated the "exclusive bargaining representative" of county educational employees, and neither party suggests that the Howard County Board of Education has designated another organization to supplant it. (*Id.* ¶ 143.) As the proposed Reduction in Force directly related "to salaries, wages, hours, and other working conditions," Md. Code, Educ. § 6-402, the Board was both authorized and required to negotiate with the Association regarding Plaintiffs' demotions. Md. Code, Educ. § 6-407(b)(1), (c); *e.g.*, *Koontz v. Assoc. of Classified Emp.*, 297 Md. 521 (1983); *Bd. of Educ. v. Regala*, 87 Md. App. 344 (1991) (affirming State Board of Education ruling that "the removal or demotion of a teacher from an extracurricular coaching assignment for other than just cause is subject to collective bargaining"). Thus, Plaintiffs could not have relied on Dr. Gerringer's statements by allowing the Association to represent them—rather, Plaintiffs had no choice in the matter.

Finally, Plaintiffs also fail to plead causation. Plaintiffs claim that Dr. Gerringer's alleged misrepresentations caused them to "suffer[] a loss of pay and benefits." (Compl. ¶ 155.) Their theory of causation appears to be that "Dr. Gerringer . . . participated in the RIF process, but took no affirmative steps to advocate for the Plaintiffs," (*Id.* ¶ 154–55.), implying that another negotiator would have achieved a more favorable result. Absent the ability to select an alternative negotiator, this argument is a nonstarter. But even if Plaintiffs had the opportunity to choose their representative, Dr. Gerringer's alleged misrepresentations—

9

concealing the Association's corporate forfeiture—have no relationship to the claimed injury. Plaintiffs complain of the quality and sincerity of Dr. Gerringer's representation, not her authority to negotiate. Accordingly, Plaintiffs fail to plead fraud as a matter of law.

**CONCLUSION**

For the foregoing reasons, it is this 10th day of September, 2021, hereby ORDERED that:

1. Plaintiff's Motion for Reconsideration (ECF No. 29) is DENIED.

2. The Clerk of the Court will transmit copies of this Memorandum Order to counsel of record and to Plaintiffs at their last known address.


_____/s/_____
Richard D. Bennett
United States District Judge