**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **CHAMBERS OF**<br>**J. Mark Coulson**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>P: (410) 962-4953 \| F: (410) 962-2985<br>mdd_jmcchambers@mdd.uscourts.gov |

June 21, 2023

LETTER ORDER AND OPINION TO COUNSEL

RE:   <u>Bomar et al v. Board of Education of Harford County et al</u>
        Civil No. 1:21-cv-00870-LKG

Dear Counsel:

On April 21, 2023, Judge Griggsby referred this matter to the undersigned for all discovery and related scheduling. (ECF No. 58). This case is predicated on Plaintiffs' claims that Defendants "engaged in discrimination based on Plaintiffs' protected class status (gender/race/age), and retaliation because of Plaintiffs' protected activity (claims of discrimination/FMLA status)." (ECF No. 62 at p. 1).[1] Currently before the undersigned is Plaintiffs' Motion for Reconsideration (ECF No. 65) as to the Court's May 2, 2023 Letter Order and Opinion to Counsel (ECF No. 64). In addition to Plaintiffs' Motion, the Court has considered Defendants' Response in Opposition to Motion for Reconsideration (ECF No. 68) and Plaintiffs' Reply in Support of Motion for Reconsideration (ECF No. 69). For the reasons more fully explained below, Plaintiffs' Motion is granted to the extent that the Court will compel Plaintiffs' requested disclosure of narrow portions of the specified comparators' personnel files.

*A. Background*

"On November 23, 2022, Plaintiffs requested twenty-one . . . additional personnel files of individuals outside Plaintiffs' protected classes who were promoted to the position of Assistant Principal, despite obtaining lower interview scores than any of the Plaintiffs." (ECF No. 62 at p. 1). Initially, Defendants refused to produce the personnel files on the basis that Plaintiffs' request was "overly broad, unduly burdensome, and harassing." *Id.* at pp. 1–2. Thereafter, Defendants clarified that they were objecting because the "candidate personnel files were not part of those items considered during the 2019 AP reassignment process and thus the subject personnel files are not relevant to any claims or defenses at issue in this case." (ECF No. 63 at pp. 1–2). In accordance with the undersigned's Memorandum to Counsel Regarding Informal Discovery (ECF No. 59), as well as the position letters of the parties, the Court issued a Letter Order and Opinion (ECF No. 64) ("first decision") on May 2, 2023, resolving this discovery dispute. *Bomar et al v. Bd. of Educ. of Harford Cnty.*, No. 1:21-cv-00870, 2023 WL 3198275 (D. Md. May 2, 2023). In that Letter Order and Opinion, the Court determined that:

1. To the extent they have not already done so, Defendants shall disclose the documents reviewed and relied upon during the 2019 AP Reassignment process,

---
[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

>    i.e., candidate resumes, video interviews, supervisory reference forms, and the Principal top-5 lists; and
>
> 2. If a supervisory reference form for a comparator considered in the 2019 AP Reassignment process makes a specific reference to a document contained in a personnel file regarding a comparator's performance or disciplinary action, Defendants must disclose such a document. Of course, Defendants should redact all confidential personal information in such documents prior to disclosure.

*Id.* at *2. However, on May 16, 2023, Plaintiffs filed their pending Motion, and therein Plaintiffs provided the Court with deposition testimony and evidence that was not available to the Court prior to its issuance of its first decision.

In their Motion, having considered the Court's concerns regarding the privacy and undue burden implications inherit in the disclosure of personnel files, Plaintiffs offered to narrow their discovery request in three meaningful ways: (1) Plaintiffs now seek only "the Comparators' performance evaluations and records of discipline . . . rather than the full personnel files of each Comparator[,]" (2) Plaintiffs now request only those "responsive documents generated between 2010 and 2018[,]" and (3) Plaintiffs now request "an additional ten ('10') rather than twenty-one ('21') personnel files." (ECF No. 65-1 at p. 10).

## B. Analysis

In its first decision, the Court set forth the standard by which it would consider Plaintiffs' request for the personnel files of the comparators. *Bomar et al*, 2023 WL 3198275 at *1. Neither party takes issue with the Court's recitation of the applicable standard, therefore the Court will again set forth that standard. Pursuant to Fed. R. Civ. P. 26(b), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." However, "[p]ersonnel files are discoverable only in limited circumstances given that personal privacy and accurate employee evaluations are important public policy concerns." *U.S. E.E.O.C v. McCormick & Schmick's Seafood Rests.*, No. DKC-11-2695, 2012 WL 3563877, at *4 (D. Md. Aug. 16, 2012) (other citations and internal quotation marks omitted). "In an unpublished decision, the Fourth Circuit indicated that personnel files are discoverable if they contain information relevant to the subject matter of a case and the need for the information outweighs the file holder's privacy interests." *Id.* (citing *Kirkpatrick v. Raleigh Cnty. Bd. of Educ.*, No. 95-2491, 1996 WL 85122, at *2 (4th Cir. Feb. 29, 1996)). As such, this Court has held "that [b]ecause personnel files contain very sensitive private information about non-parties to this litigation, this court must weigh the significant privacy interests at stake against the need for the information contained in the personnel files." *McCormick*, 2012 WL 3563877 at *4 (quoting *Halim v. Balt. City Bd. of Sch. Comm'rs*, No. WMN-11-2265, 2012 WL 2366338, at *2 (D. Md. June 20, 2012) (internal quotation marks omitted). Furthermore, in regard to the relevancy of the portions of the personnel files Plaintiffs request, the Court is cognizant that to establish a *prima facie* case of discrimination in the context of a "reduction in force" case,

>    a Plaintiff must show that 1) she was protected under Title VII, 2) she was selected from a larger group of candidates, 3) she was performing at a level substantially equivalent to the lowest level of that in the group retained, and 4) the process of selection produced a residual work force that contained some unprotected persons

> who were performing at a level lower than that at which the Plaintiff was performing.

*Corti v. Storage Tech. Corp.*, 304 F.3d 336, 340, n. 6 (4th Cir. 2002) (citing *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1992)).

In its first decision, the Court gave great weight to Defendants' assertion that

> four current and former Board employees who were involved in the 2019 AP Reassignment process testified that the process involved consideration of a set of data and information specifically created for the process and that the personnel files sought by Plaintiffs, and the evaluations and disciplinary records contained in them were not considered by the decisionmakers in the process.

*Id.* at *2. The Court accepted Defendants' then-uncontradicted contention that "the 2019 AP Reassignment process only considered the candidate resumes, video interview scores (which were compiled into data sets by HR), supervisory reference forms, and the Principal Top-5 lists." *Id.* (internal quotation marks omitted). However, thanks to the additional briefings by the parties, the Court now appreciates a nuance that the Court must give due consideration.

Initially, the Court recognizes the lack of clarity regarding who the parties consider when they refer to "decisionmakers" in the 2019 AP Reassignment process. According to Defendants, "Dr. Bulson, Mr. Schmitz, and Ms. Vaught . . . made the final assignment decisions." (ECF No. 68 at p. 6). However, Plaintiffs indicate that the principals of the schools in which AP reassignments occurred played a more significant role in the reassignment process than the Court initially understood. Particularly relevant to the principals' role in the reassignment process was the creation of the principals' "top-5 lists." As indicated above, the principals' top-5 lists were considered by the final decisionmakers when making the final reassignment determinations. The Court now understands, however, that when a principal selected as their first choice a candidate who was already under that principal's supervision, that candidate was selected as that principal's assistant principal "100 percent of [the] time[.]" (ECF No. 65-4 at p. 6); (ECF No. 68 at p. 6) ("Dr. Bulson and his leadership team made the final assignment decisions by honoring a Principal's first choice if they listed their current Assistant Principals as their number one preference in order to maintain continuity of leadership . . . ."). This indicates to the Court that the principals participating in the reassignment process often played a far greater role than simply providing input; rather, the principals often were the final decisionmakers to the extent their top-ranked candidate was already under their supervision because such a ranking was given complete deference by the leadership team.

This begs the question of what information the principals relied upon in their own ranking of candidates given that they were the de facto final decisionmakers when their top choice coincided with a candidate who was already an assistant principal in the same school. Defendants argue that in creating their top-5 lists, principals were directed to create those lists "based on their needs for their organization which was informed by the interviews that they conducted, their participation in the interview process[.]" (ECF No. 68 at p. 11). Even more, Defendants maintain that, with respect to creating their top-5 lists, principals further considered "the cover letter or resume and a written piece that the candidate provided[,] as well as their knowledge of what their

3

needs were, specific needs were for their building." *Id.* (internal quotation marks omitted). Despite this, Defendants acknowledge "that there was an element of subjectivity in the process . . . at the principal level in choosing their top-five candidates . . . ." *Id.* at p. 12. Plaintiffs, in turn, help the Court further understand this admitted subjectivity. Plaintiffs direct the Court to the deposition testimony of Dr. Bulson, who admitted that with regard to the material or factors considered by principals in making their top-5 lists, "there wasn't a specific requirement." (ECF No. 65-1 at p. 7; ECF No. 65-4 at p. 4). The only consideration that would have prevented a principal from acting arbitrarily or considering factors beyond a candidate's application materials was the "professional expectations for the[ principals]." *Id.* Despite this, the deposition testimony of Mr. Schmitz admits that the top-5 lists did not necessarily include the highest rated candidates; principals could have used their "subjective familiarity with the candidate's performance in deciding whether or not to include them in the top five[.]" (ECF No. 65-3 at p. 4–6). Of course, if such expectations were enough to keep prohibited discriminatory conduct at bay, cases such as the one *sub judice* would never arise.

Having now an appreciation for the full role principals played in the reassignment process, the Court is compelled to expand its previous order on the topic of Plaintiffs' request for portions of comparators' personnel files. While the Court remains ever cognizant of the significant privacy interests the comparators and Defendants have in those personnel files, the Court believes that granting Plaintiffs their significantly narrowed request strikes an appropriate balance between those interests and Plaintiffs' right to discover relevant material. Accordingly, it is ordered that:

1. Plaintiffs' Motion for Reconsideration (ECF No. 65) is hereby granted to the extent that it seeks Defendants' disclosure of the performance evaluations, records of disciplinary actions, investigations, and prior complaints regarding the following individuals identified in Plaintiff's Request for Production No. 18 during the period of 2010–2018:

    a. Lorien Covelly;
    b. Jennifer Vlangas;
    c. Anjanette Cook;
    d. Melissa McKay;
    e. Joshua Clemmer;
    f. Drew Hoagland;
    g. Katie Scharpf;
    h. Caitlin Potestio;
    i. Laurien Ascenzi; and
    j. Tracy Hanus;

2. Defendants shall provide such disclosures by July 12, 2023.[2] Of course, Defendants shall redact all confidential personal information in such documents prior to disclosure; and

3. The parties shall confer and provide the Court with a jointly proposed scheduling order by June 30, 2023.

Despite its informal nature, this Letter Order and Opinion is a formal Opinion and Order of the Court.

### Comment on Discovery Referral

As already stated, Judge Griggsby referred this case to the undersigned for all discovery and related scheduling on April 21, 2023. (ECF No. 58). Confusion has arisen between the parties regarding the significance of this referral. From April 21, 2023, onward, the undersigned shall handle all discovery and related scheduling matters in this case. As such, the Memorandum to Counsel Regarding Informal Discovery (ECF No. 59) shall govern any and all discovery issues that may arise in this case. The Court urges the parties to review the Local Rules—particularly Loc. R. 301 & 302—to gain a further understanding of this Court's discovery referral procedure, as well as the procedure the parties must follow if they wish to appeal a discovery decision of the undersigned in the future.

Sincerely yours,

/s/
J. Mark Coulson
United States Magistrate Judge

CC: The Honorable Lydia K. Griggsby

---

[2] As recognized in its first decision, Defendants previously produced ten personnel files which Plaintiffs did not request. *Bomar et al*, 2023 WL 3198275 at *2, n.1. Although the Court previously determined that such disclosure did not constitute a waiver regarding the production of all requested personnel files, the Court now recognizes this previous disclosure to subvert any notion that the production of specific portions of ten personnel files now requested could be unduly burdensome.