**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ROBYN BOMAR, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 21-cv-00870-LKG |
| v. | ) | |
| | ) | Dated:  September 6, 2024 |
| BOARD OF EDUCATION OF | ) | |
| HARFORD COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this employment discrimination matter, Plaintiffs, Robyn Bomar, Letina Hall, Jonise Stallings and Shakera Adkins, bring claims against Defendants, the Board of Education for the Harford County, Maryland Public Schools and Dr. Sean Bulson, for violations of 42 U.S.C. § 1983; the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, § 20-601 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 e*t seq.*  ECF No. 1 at ¶ 1.  The Defendants have moved for summary judgment on these claims, pursuant to Fed. R. Civ. P. 56. ECF No. 75.  The motion is fully briefed.  ECF Nos. 75, 80, 83.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** the Defendants' motion for summary judgment and (2) **DISMISSES** the complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this employment discrimination matter, Plaintiffs assert federal and state law claims of discrimination upon the bases of race, sex and age, and retaliation claims, against the Defendants, pursuant to Title VII, 42 U.S.C. § 2000e *et seq*, the MFEPA, Md. Code Ann., State Gov't, § 20-601 *et seq*., the ADEA, 29 U.S.C. § 621 *et seq*., 42 U.S.C. § 1983 and the FMLA, 29 U.S.C. § 2611 e*t seq*.  Specifically, Plaintiffs assert the following 10 claims in the complaint: (1) Section 1983-14th Amendment Equal Protection (Count II); (2) Title VII-Disparate Treatment Employment Discrimination on the Bases of Sex and Race (Count III); (3) MFEPA-Disparate Treatment Employment Discrimination on the Bases of Sex and Race (Count IV); (4) Title VII-Retaliation (Count V); (5) MFEPA-Retaliation (Count VI); (6) ADEA-Employment Discrimination on the Basis of Age (Count VII); (7) MFEPA-Age Discrimination (Count IX); (8) FMLA-Retaliation (Count X); (9) Title VII-Disparate Impact Employment Discrimination on the Bases of Sex and Race; and (10) MFEPA- Disparate Impact Employment Discrimination on the Bases of Sex and Race.  ECF No. 1.[2]  As relief, Plaintiffs seek, among other things, declaratory relief, back pay, front pay, compensatory and general damages, punitive damages and to recover attorney's fees and costs from the Defendants.  *Id*. at 50-51.

The Parties

Plaintiff Robyn Bomar identifies as an African American female and she resides in Havre de Grace, Maryland.  ECF No. 1 at ¶ 5.  At all times relevant to this case, Plaintiff Bomar was employed by the Harford County Public Schools (the "HCPS") as an Assistant Principal and she was above the age of 40.  *Id.*

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the Defendants' motion for summary judgment, the memorandum in support of the motion for summary judgment and the exhibits thereto; Plaintiffs' response in opposition to the Defendants' motion for summary judgment and the exhibits thereto.  ECF Nos. 1, 75-1, 80.

[2] On July 20, 2021, the Court dismissed Plaintiffs' fraud and intentional misrepresentation claims set forth in Count I of the complaint.  ECF No. 23.

Plaintiff Letina Hall identifies as an African American female and she resides in Belcamp, Maryland.  *Id*. at ¶ 6.  At all times relevant to this case, Plaintiff Hall was employed by the HCPS as an Assistant Principal and she was above the age of 40.  *Id*.

Plaintiff Jonise Stallings identifies as an African American female and she resides in Aberdeen, Maryland.  *Id*. at ¶ 7.  At all times relevant to this case, Plaintiff Stallings was employed by the HCPS as an Assistant Principal and she was above the age of 40.  *Id*.

Plaintiff Shakera Adkins identifies as an African American female and she resides in Havre de Grace, Maryland.  *Id*. at ¶ 8.  At all times relevant to this case, Plaintiff Adkins was employed by the HCPS as an Assistant Principal and she was above the age of 40.  *Id.*

Defendant the Board of Education for the HCPS is a legal entity established by Maryland law, that is headquartered in Bel Air, Maryland.  *Id*. at ¶ 9.

Defendant Dr. Sean Bulson ("Dr. Bulson") was employed as the Superintendent of the Board of the HCPS during all times relevant to this case.  *Id*. at ¶ 10.

<u>The Plaintiffs' Employment With The HCPS</u>

The Plaintiffs in this employment discrimination matter are African American females over the age of 40, who were previously employed as Assistant Principals with the HCPS.  ECF *Id*. at ¶¶ 5-9.

In 1991, the HCPS hired Plaintiff Jonise Stallings as a teacher.  ECF No. 80-21 (Pl. Ex. 20) at 141-142.  In 2005, Plaintiff Stallings was promoted to the position of an Assistant Principal.  *Id*. at 142.

In 2000, the HCPS hired Plaintiff Letina Hall as Assistant Principal.  ECF No. 80-19 (Pl. Ex. 18).  On July 15, 2019, Plaintiff Hall resigned her position with the HCPS.  ECF No. 75-59 (Def. Ex. 54).

In July 2007, the HCPS hired Plaintiff Robyn Bomar as an Assistant Principal.  ECF No. 80-14 (Pl. Ex. 13, Bomar Dep.) at 36:21–37:4.  Plaintiff Bomar resigned her position with the HCPS on July 15, 2020.  *See* ECF No. 75-53 (Def. Ex. 48).

In 2017, the HCPS hired Plaintiff Shakera Adkins as an Assistant Principal.  ECF No. 80-20 (Pl. Ex.19).  Plaintiff Adkins resigned her position with the HCPS on October 10, 2019.  ECF No. 75-60 (Def. Ex. 55).

<u>The 2019 Reassignment Process</u>

In the fall of 2018, the HCPS determined that there would be a budget shortfall for the 2019-20 school year.  ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 20:13–26:4, 35:13–16.  And so, the HCPS Superintendent, Defendant Dr. Sean Bulson, in consultation with his executive leadership team, balanced the budget by, among other things, cutting school personnel "to balance [the budget] to the best we could proportionately with personnel in the district."  ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 28:20–36:6.

At the time of the anticipated budgetary shortfall, the HCPS had a "Reduction in Force" procedure in place (the "RIF Procedure").  *See* ECF No. 75-2 (Def. Ex. 2, Bulson Dep.) at 42:17–46:20; ECF No. 75-2 (Def. Ex. 2, Bulson Dep. [Ex. 2]) at 26-29.  But, Dr. Bulson elected not to utilize the RIF Procedure in connection with the decision to cut staff.  *See* ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 49:4–50:3.  Instead, Dr. Bulson utilized his authority under Md. Code Ann. Educ. § 6-201(b) to transfer or reassign personnel as the needs of the school require, to implement the "overarching strategy of doing our very best to ensure everyone who had a position stayed within Harford County Public Schools" and to base reassignment decisions "strictly on the needs of the school system to be able to balance the budget."  ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 49:11-17, 51:9-13.

In reaching his decision not to utilize the RIF Procedure, Dr. Bulson expressed certain concerns with the existing RIF Procedure, including the need to allow input from Principals in the process, because "it was important to [him] that the leaders in these schools had an opportunity to have a say into who was on their team [and] . . . that they construct teams that could serve the school best, knowing there were fewer overall administrators to do that[.]"  ECF No. 75-2 (Def. Ex. 2, Bulson Dep.) at 68:17–69:4; *see also id.* at 68:15–69:15, 70:6-20.  And so, Dr. Bulson delegated the work of developing a process that was ultimately used to make the reassignment decisions to the HCPS Human Resources personnel, "to be sure [that] every candidate had an opportunity for equal consideration by all of the Principals[.]"  ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 80:16-20; *see also* ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 66:3–67:7.

On December 14, 2018, Dr. Bulson met with the HCPS Principals to share information about pending budget cuts and the expected staff cuts. *See* ECF No. 75-8 (Def. Ex. 5) at 11; *see also* ECF No. 75-9 (Def. Ex. 6). On January 11, 2019, Dr. Bulson met with HCPS Principals to inform them of the process for Assistant Principal reassignments (the "2019 Reassignment Process"). ECF No. 75-10 (Def. Ex. 7).

The 2019 Reassignment Process that the HCPS adopted for the Assistant Principal reassignments proceeded as follows. First, all then-current HCPS Assistant Principals and Instructional Facilitators received an invitation to apply for an Assistant Principal position. *See* ECF No. 75-8 (Def. Ex. 5) at 12; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 82:7-12; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 64:10–65:18. The Assistant Principal and Instructional Facilitator positions were also reclassified to 12-month positions. *See* ECF No. 75-8 (Def. Ex. 5) at 12; *see also* ECF No. 75-11 (Def. Ex. 8).

Second, the HCPS Human Resources Department contacted impacted employees with detailed instructions for completing the online application process for the Assistant Principal positions, which included the submission of a resume and immediate supervisory reference. *See* ECF No. 75-8 (Def. Ex. 5) at 12; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 82:13–20; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 65:4-5; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 52:14–54:9; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 45:4-19. Third, the selection process included a digital interview, consisting of uniform interview questions and one written response using a third-party program called "RIVS." *See* ECF No. 75-8 (Def. Ex. 5) at 12-13; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 82:13–20; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 65:4-5; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 52:14–54:9; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 45:4-19.

Fourth, the candidates applied for an Assistant Principal position within the HCPS system at large, rather than for a position with particular school. *See* ECF No. 75-8 (Def. Ex. 5) at 13. Fifth, prior to the interview dates, the HCPS Human Resources staff shared with the Assistant Principals and Instructional Facilitators detailed instructions on how to use the third-party software to participate in the digital interview process. *See* ECF No. 75-8 (Def. Ex. 5) at 13; *see also* ECF No. 75-13 (Def. Ex. 10). The HCPS Human Resources staff also shared with the Principals who were participating in the process as interviewers detailed instructions for

reviewing and scoring the Assistant Principal candidates. *See* ECF No. 75-8 (Def. Ex. 5) at 13; *see also* ECF No. 75-14 (Def. Ex. 11); ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 71:4–72:3.

Sixth, after the candidates submitted their interviews, the Principals reviewed and scored each of the video interviews for the candidates in their respective grade levels (Elementary or Secondary) and ranked their top five candidate choices in order, using their judgment in deciding the candidates they viewed as the best fit for their building based on the needs for their building, the skills and abilities they were looking for amongst the candidates and informed by the interviews they conducted. *See* ECF No. 75-8 (Def. Ex. 5) at 13; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 82:21–83:17; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 65:5-18, 72:6-12, 74:13–75:3, 95:1-5; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 53:10–54:21, 62:11–63:15; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 45:4-19; 78:17–81:17, 127:18–130:5.

The HCPS Human Resources staff then gathered each individual panel member's scores, compiled the data for each candidate and provided this information to identified members of senior leadership. *See* ECF No. 75-8 (Def. Ex. 5) at 13; *see also* ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 65:12-18, 84:4-7. After the interview process was completed, the Executive Directors were responsible for considering the responses the Principals provided, and working with individual Principals to establish who would ultimately be assigned to the Assistant Principal positions in their schools based as much as possible upon the Principals' recommendations. *See* ECF No. 75-8 (Def. Ex. 5) at 13-14; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 83:18–84:5; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 65:16-18, 67:13-20; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 62:11–63:15; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 47:6–51:2. [3] Lastly, the Executive Directors then made recommendations to Dr. Bulson for the final assignments of the Assistant Principal candidates for each school, which Dr. Bulson approved. *See* ECF No. 75-8 (Def. Ex. 5) at 14; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 84:17-21, 87:20–88:19; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 62:16–63:15; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 47:6–51:2.

---

[3] The Executive Directors considered the following three factors in reviewing candidate application materials to make their hiring recommendations: (1) "if a Principal put as their first choice a candidate who was working in their school"; (2) the priority and preference of Principals based on their lists; and (3) the "the accumulation of scores from all the people who interviewed the candidate[.]" *See* ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 90:3-11, 96:10–97:1; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 85:15-20, 86:17–91:11; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 73:12-18, 74:1–78:5; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 101:2–102:16.

<u>The Results Of The 2019 Reassignment Process</u>

During the 2019 Reassignment Process, 53 candidates applied for, and were considered for, reassignment to Secondary level Assistant Principal positions.  *See* ECF No. 75-8 (Def. Ex. 5) at 14.  There were 19 Principal interview scores for each of these candidates and the interview scores ranged from a score of 299 points (low) to 573 points (high), out of a total of 665 points, with a mean cumulative score of 481 points and a median cumulative score of 487 points.  *See id.*; *see also* ECF No. 75-17 (Def. Ex. 14); ECF Nos. 75-18, 75-19 (Def. Ex. 15).  Each school Principal also identified his or her top five candidates and any top five shared position candidates.  *See* ECF No. 75-8 (Def. Ex. 5) at 14; ECF No. 75-17 (Def. Ex. 14).

The Elementary level interviews involved 39 candidates, with 33 Principal interview scores for each candidate.  *See* ECF No. 75-8 (Def. Ex. 5) at 14-15.  The Principal interview scores for each candidate ranged from a score of 548 points (low) to 1021 points (high), out of a total of 1155 points, with a mean cumulative score of 828 points and a median cumulative score of 857 points.  ECF No. 75-20 (Def. Ex. 16); ECF No. 75-21 (Def. Ex. 17).  Each school Principal also identified his or her top five candidates and any top five shared position candidates.  *See* ECF No. 75-8 (Def. Ex. 5) at 14; ECF No. 75-17 (Def. Ex. 14).

As a result of the 2019 Reassignment Process, 13 former HCPS Assistant Principals, including the four Plaintiffs in this case, were demoted from an Assistant Principal position and reassigned to classroom teaching positions, or to other non-administrative positions.  *See* ECF No. 75-8 (Def. Ex. 5) at 17-18.  Of those 13 individuals, four were African American females over the age of 40; six were Caucasian females over the age of 40; two were Caucasian males over the age of 40; and one was a Caucasian male under the age of 40.  ECF No. 75-23 (Def. Ex. 18).

In addition, six African American candidates who participated in the interview process were placed in Assistant Principal positions: one of the candidates was a female under the age of 40 and five of the candidates were males over the age of 40.  *See id.*  And so, of the 101 applicants considered for reassignment to an Assistant Principal position, 88 were Caucasian, 12 were African American and one was American Indian/Alaskan Native.  *See id*.

The four Plaintiffs in this action were not selected for reassignment to an Assistant Principal position during the 2019 Reassignment Process.  *See* ECF No. 75-8 (Def. Ex. 5) at 15-18; ECF No. 75-23 (Def. Ex. 18); ECF No. 75-24 (Def. Ex. 19).  It is undisputed that all four

Plaintiffs received above satisfactory performance evaluations before the 2019 Reassignment Process.  ECF No. 80-21 (Pl. Ex. 20) at 1-6 (Adkins); 7-38 (Hall); 39-100 (Bomar); 101-104 (Stallings).

The Evaluation Of Plaintiff Shakera Adkins

Relevant to the pending motion for summary judgment, Plaintiff Shakera Adkins participated in the Elementary level interviews during the 2019 Reassignment Process and her cumulative interview score was 702, which placed her 35th out of 39 candidates.  ECF No. 75-25 (Def. Ex. 20).  Plaintiff Adkins' immediate supervisor, Principal Rebecca Spencer, provided a reference of "recommend with reservations" for hire.  *See* ECF No. 75-26 (Def. Ex. 21).  In this regard, Principal Spencer testified in her deposition that, "over the course of [their] work together, there were some . . . inconsistencies in performance and hence, the areas that are rated as average . . . .  So there were reservations with performance that I wanted others to be aware of."  ECF No. 75-27 (Def. Ex. 22, Spencer Dep.) at 23:6-12.

Principal Spencer also testified in her deposition that "there were some inconsistencies with following through of tasks or being prepared for a meeting, attendance at certain meetings . . . [and] miscommunication would happen where teachers may have come to me for clarification on something because they didn't understand a communication that had gone out."  ECF No. 75-25 (Def. Ex. 22) at 26:5-18.  Principal Spencer also testified that she did not believe Plaintiff Adkins went "the extra mile in seeking the resources" that were going to "fit into the solution to [a] problem."  ECF No. 75-27 (Def. Ex. 22, Spencer Dep.) at 30:4-15.

Plaintiff Adkins did not appear on any Principal's top-five list.  *See* ECF No. 75-20 (Def. Ex. 16); ECF No. 75-20 (Def. Ex. 17); *see also* ECF No. 75-28 (Def. Ex. 23, Adkins Dep.) at 87:14–96:20.  On June 10, 2019, the HCPS Assistant Superintendent for Human Resources, Jean Mantegna, issued a letter to Plaintiff Adkins notifying her of her reassignment from the position of Assistant Principal at Emmorton Elementary School to a Special Education teacher position at the John Archer School.  *See* ECF No. 75-29 (Def. Ex. 24).

The Evaluation Of Plaintiff Robyn Bomar

Plaintiff Robyn Bomar participated in the Secondary level interviews and her cumulative interview score was 501, which placed her 17th out of 53 candidates.  *See* ECF No. 75-35 (Def. Ex. 30).  Plaintiff Bomar's immediate supervisor, Principal Kilo Mack (African American, Male,

Over 40), provided a reference of "[d]o not recommend" for hire.  ECF No. 75-36 (Def. Ex. 31).
Plaintiff Bomar was rated as "poor" in the category of "Coworker relationships–tact,
cooperative, judgment" and "fair" in three other relevant categories.  *See id*.  Principal Mack also
noted other areas of concern regarding Plaintiff Bomar's work performance, including her
receipt of letters of reprimand and he indicated that she was not well suited for either the
elementary, middle or high school student population.  *See id*.  The Executive Director who
reviewed Plaintiff Bomar's application, Joseph Schmitz, testified during his deposition he did not
recommend Plaintiff Bomar for an Assistant Principal position, because she "received [a]
particularly negative reference from [Principal] Mack[,] who had concerns with her throughout
the year and documented them . . . with regard to her coworker relationships, her ability to
complete multiple tasks, her perception by colleagues as a leader, her demonstration of
leadership characteristics, and his overall recommendation that she is not well-suited for
continuing, for [an] administrative position."  ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at
126:10-19, 161:1-4.

   Plaintiff Bomar appeared on the following Principals' top-five lists: (1) the Edgewood
Middle School Principal's top-five shared candidate list, as the third choice; (2) the Bel Air High
School Principal's top-five list, as the fifth choice; and (3) the Bel Air High School Principal's
top-five shared-candidate list, as the second choice.  *See* ECF No. 75-18 at 14, ECF No. 75-19 at
4 (Def. Ex. 15); ECF No. 75-17 (Def. Ex. 14) at 10, 19; *see also* ECF No. 75-16 (Def. Ex. 13,
Bomar Dep.) at 92:3–103:10.  On June 10, 2019, the HCPS Assistant Superintendent for Human
Resources, Jean Mantegna, issued a letter to Plaintiff Bomar notifying her of her reassignment
from her position as an Assistant Principal at the Edgewood High School to a Health and
Physical Education teacher position at the Aberdeen High School.  *See* ECF No. 75-39 (Def. Ex.
34).

<u>The Evaluation Of Plaintiff Letina Hall</u>

   Plaintiff Letina Hall participated in the Secondary level interview and her cumulative
interview score was 436, which placed her 45th out of 53 candidates.  *See* ECF No. 75-41 (Def.
Ex. 36).  Plaintiff Hall's immediate supervisor, Dr. Sean Abel, provided a reference of
"recommend with reservations" for hire.  ECF No. 75-42 (Def. Ex. 37).  Dr. Abel wrote in his
supervisory reference that, while Plaintiff Hall "develops strong relationships with students and
parents," "[s]he struggles, however, with organization and handling multiple issues at one time,"

and noted that "[a]ttempts to provide constructive criticism are met with not usually successful – communication proves to be difficult at times."  *Id*.  In addition, Dr. Abel also noted that he "hesitate[s] . . . to entrust some of the more critical leadership assignments to her."  *Id*.  Dr. Abel also testified during his deposition that he did not highly recommend Plaintiff Hall due to her "difficulty with organization, difficulty with handling multiple topics at once [and] . . . the difficult ability to try to make improvement through having difficult conversations."  ECF No. 75-43 (Def. Ex. 38, Abel Dep.) at 22:14–23:5 (*see also* Exhibit 1 thereto).  Executive Director Joseph Schmitz also testified that Plaintiff Hall's overall rating was lower and "she receive[d] a very – not stellar reference from her immediate supervisor."  ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 145:4-9.

Plaintiff Hall appeared on the top-five list of South Hampton Middle School Principal Charles Hagan (Caucasian Male), as the fourth choice.  *See* ECF No. 75-18 at 34 (Def. Ex. 15); ECF No. 75-17 (Def. Ex. 14) at 16.  On June 10, 2019, the HCPS Assistant Superintendent for Human Resources, Jean Mantegna, issued a letter to Plaintiff Hall notifying her of her reassignment from her previous position as an Assistant Principal at Patterson Mill Middle School to a Classroom Teacher – Grade 4 position at Meadowvale Elementary Schools.  *See* ECF No. 75-44 (Def. Ex. 39).

<u>The Evaluation Of Plaintiff Jonise Stallings</u>

Lastly, Plaintiff Jonise Stallings participated in the Secondary level interview and her cumulative interview score was 360, which placed her 52nd out of 53 candidates.  *See* ECF No. 75-48 (Def. Ex. 43).  Plaintiff Stallings' immediate supervisor, Principal James Reynolds, provided a reference of "recommend [for hire]," and he rated Plaintiff Stallings as "average" in six out of nine applicable categories.  *See* ECF No. 75-49 (Def. Ex. 44).  In this regard, Principal Reynolds testified during his deposition that:

> The entire decision was based on the interviews and watching every candidate, about fifty interviews.  And this gave us the opportunity to see all the [S]econdary candidates in the system . . . . I totally used the interview as well as the skills ascertained that I watched during the interview.

ECF No. 75-50 (Def. Ex. 45, Reynolds Dep.) at 46:5–48:2.

Executive Director Joseph Schmitz also testified that Plaintiff Stallings was not recommended for placement as an Assistant Principal, because her "cumulative scores were low,

and she did not have good ratings from her Principal."  ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 148:16–150:5.  Plaintiff Stallings did not appear on any Principal's top-five list.  *See* ECF Nos. 75-18, 75-19 (Def. Ex. 15); ECF No. 75-17 (Def. Ex. 14).  On June 10, 2019, the HCPS Assistant Superintendent for Human Resources, Jean Mantegna, issued a letter to Plaintiff Stallings notifying her of her reassignment from her previous position as an Assistant Principal at Havre De Grace High School to a School Counselor position at Fallston High School.  *See* ECF No. 75-51 (Def. Ex. 46).

The Comparators

Plaintiffs have identified five individuals who were selected for Assistant Principal positions during the 2019 Reassignment Process, to show that the HCPS treated them less favorably than these similarly situated candidates who are outside of Plaintiffs' protected classes. *See* ECF No. 80 at 37-42.

First, Jennifer Vlangas (Caucasian, Female, Over 40) was selected for an Assistant Principal position during the 2019 Reassignment Process.  ECF No. 75-23 (Def. Ex 18) at 4.  Ms. Vlangas participated in the Elementary level interviews, and her cumulative interview score was 838, which placed her 22nd of 39 candidates.  ECF No. 75-20 (Def. Ex. 16) at 3.  Ms. Vlangas received a supervisory reference of "recommend [for hire]," and she appeared on two Principals' top-five candidate lists and as the fifth-ranked candidate on Principal Rebecca Spencer's top-five candidate list.  ECF No. 75-23 (Def. Ex 18) at 4; ECF No. 75-21 (Def. Ex. 17) at 31, 49.

Second, Anjanette Cook (American Indian/Alaskan Native, Female, Over 40) was selected for an Assistant Principal position during the 2019 Reassignment Process.  ECF 75-23 (Def. Ex. 18) at 4.  Ms. Cook participated in the Elementary level interviews and her cumulative interview score was 639, which placed her 38th of 39 candidates.  ECF No. 75-20 (Def. Ex. 16) at 3.  Ms. Cook received a supervisory reference of "recommend [for hire]," and her then-immediate supervisor Principal Marc Hamilton ranked Ms. Cook first on his top-five candidate list.  ECF No. 75-23 (Def. Ex 18) at 4; ECF No. 75-20 at 16.

Third, Melissa McKay (Caucasian, Female, Over 40) was selected for an Assistant Principal position during the 2019 Reassignment Process.  ECF No. 75-23 (Def. Ex. 18) at 3.  Ms. McKay participated in the Secondary level interviews and her cumulative interview score was 485, which placed her 28th out of 53 candidates.  ECF No. 75-17 (Def. Ex. 14) at 3.  Ms. McKay received a supervisory reference of "recommend [for hire]," and she appeared as the top

candidate on her then-immediate supervisor Principal Charles Hagan's top-five shared candidates list and third on his top-five candidate list. ECF No. 75-23 (Def. Ex. 18) at 3; ECF No. 75-17 (Def. Ex. 14) at 16.

Fourth, Drew Hoagland (Caucasian, Male, 40) was selected for an Assistant Principal position during the 2019 Reassignment Process. ECF No. 75-23 (Def. Ex. 18) at 3. Mr. Hoagland participated in the Secondary level interviews and his cumulative interview score was 445, which placed him 42nd out of 53 candidates. ECF No. 75-17 (Def. Ex. 14) at 3. Mr. Hoagland received a supervisory reference of "recommend [for hire]," and appeared on the top-five candidate lists of both Principals of the two schools where he was ultimately assigned for the 2019-20 school year. ECF No. 75-23 (Def. Ex. 18) at 3; ECF No. 75-17 (Def. Ex. 14) at 11, 23; ECF No. 75-24 (Def. Ex. 19) at 2.

Fifth, John Siemsen (Caucasian, Male, Over 40) was selected for an Assistant Principal position during the 2019 Reassignment Process. ECF No. 75-23 (Def. Ex. 18) at 3. Mr. Siemsen participated in the Secondary level interviews and his cumulative interview score was 419, which placed him 48th out of 53 candidates. ECF No. 75-17 (Def. Ex. 14) at 3. Mr. Siemsen received a supervisory reference of "recommend [for hire]," and was ranked second on Principal Kilo Mack's top-five candidate list. ECF No. 75-23 (Def. Ex. 18) at 3; ECF No. 75-19 (Def. Ex. 15) at 16.

<u>The Plaintiffs' Non-Selection For Other HCPS Assistant Principal Positions</u>

Following the 2019 Reassignment Process, other Assistant Principal position openings with the HCPS arose. *See* ECF No. 75-53 (Def. Ex. 48) at 4; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 139:16–141:20. And so, the HCPS appointed the following individuals to Assistant Principal positions between July 1, 2019, and December 31, 2022: Monisha Thomas (African American, Female), Nitrease Quickley (African American, Female, Over 40), Erik Snyder (Caucasian, Male, Over 40), Kristina Marzullo (Caucasian, Female, Over 40) and Theodore Childs (Caucasian, Male, Under 40). *See* ECF No. 75-53 (Def. Ex. 48).

Relevant to this dispute, an Assistant Principal position at Aberdeen High School became vacant in August 2019. *Id.* at 4. And so, the candidates who were in the Secondary Assistant Principal pool during the 2019 Reassignment Process were considered for this vacancy. *Id.* at 4-5. To fill this position, Dr. Bulson, in collaboration with the Executive Director of Middle and

High School Performance, reviewed candidates in the Secondary Assistant Principal pool and ultimately assigned Monisha Thomas (African American, Female) to the position.  *See id.*; *see also* ECF No. 75-54 (Def. Ex. 49, O'Brien Dep.) at 29:13–35:19.

Plaintiff Bomar was one of the candidates considered for this position and the Principal of Aberdeen High School, Michael Quigg, initially identified Plaintiff Bomar as his choice to fill the vacancy.  ECF No. 80-12 (Pl. Ex. 11, Quigg Dep.) at 27:18–33:15.  The Executive Director of Secondary School Performance and Instruction, Michael O'Brien, and the Director of Secondary School Performance and Instruction, Colin Carr, then requested that Principal Quigg, identify three candidates for consideration for this position, and so, Principal Quigg identified Plaintiff Bomar, Stacey Lyles (Caucasian, Female), and Monisha Thomas (African American, Female) for the position.  *See* ECF No. 75-54 (Def. Ex. 49, O'Brien Dep.) at 32:9–33:1; ECF No. 75-55 (Def. Ex. 50, Quigg Dep.) at 30:2–31:8.

Principal Quigg stated that he identified Plaintiff Bomar, because she "brought years of experience and familiarity[,] as [she and Quigg] had been Assistant Principals together."  ECF No. 75-55 (Def. Ex. 50, Quigg Dep.) at 32:20–33:7.  Executive Director O'Brien determined that Ms. Thomas was the best candidate for the position at that time, because: (1) she had a math background, and since Aberdeen High School housed a math and science academy, it was an advantage to have administrators with a "math and science perspective"; and (3) she came from Aberdeen Middle School and knew the families and the students.  ECF No. 75-54 (Def. Ex. 49, O'Brien Dep.) at 33:4-16.  Executive Director O'Brien and Principal Quigg also both testified that Plaintiff Bomar did not have a math background and was not certified in math. ECF No. 75-54 (Def. Ex. 49, O'Brien Dep.) at 33:17–34:12; ECF No. 75-55 (Def. Ex. 50, Quigg Dep.) at 41:19–42:1.

In the summer of 2020, Plaintiffs Bomar and Stallings also applied for four Assistant Principal positions within the HCPS, at Bel Air High School, Edgewood High School, Joppatowne High School and Patterson Mill Middle/High School, respectively, which were communicated to candidates in the Secondary Assistant Principal pool, and for which candidates in the Secondary Assistant Principal pool were invited to submit materials to confirm their interest in the positions.  *See* ECF No. 75-53 (Def. Ex. 48); ECF No. 80-36 (Pl. Ex. 35).  Neither Plaintiff was selected for these positions.  *See id.*; *see also* ECF No. 75-56 (Def. Ex. 51).  The individuals selected for these positions were: Nitrease Quickley (African American, Female,

Over 40), Erik Snyder (Caucasian, Male, Over 40), Kristina Marzullo (Caucasian, Female, Over 40), Theodore Childs (Caucasian, Male, Under 40).  ECF No. 75-53 (Def. Ex. 48) at 4-5.

Principal Kilo Mack participated in the interviews for these positions, and Principal Mack testified during his deposition that he did not consider Plaintiff Bomar for the opening at Edgewood High School due to the prior negative experiences he had with Plaintiff Bomar.  ECF No. 75-37 (Def. Ex. 32, Mack Dep.) at 72:7-12.  Principal Sean Abel also participated in the interviews for the openings and he testified that he was looking only for male candidates, because "the other two Assistant Principals who were still there were female" and "there's so many search situations and [locker] room issues that need to be dealt with" and "searches can only be done by administrators."  ECF No. 75-43 (Def. Ex. 38, Abel Dep.) at 64:8–65:5.

Plaintiff Bomar declined subsequent offers to apply to openings for Assistant Principal positions in December 2020 and November 2021.[4]  *See* ECF No. 75-53 (Def. Ex. 48); ECF No. 75-57 (Def. Ex. 52).  Plaintiff Jonise Stallings also declined to submit application materials in response to openings for Assistant Principal positions in June and November 2021 and to remain in the Assistant Principal candidate pool when her membership term in the candidate pool expired on June 30, 2022.  *See* ECF No. 75-53 (Def. Ex. 48); ECF No. 75-58 (Def. Ex. 53).

<u>Plaintiffs Adkins And Hall Take FMLA Leave</u>

In early 2019, Plaintiffs Shakera Adkins and Letina Hall both requested, and later took, approved FMLA leave.  ECF No. 80-22 (Pl. Ex. 21) at 1-8 (Adkins), 9-15 (Hall); ECF No. 75-34 (Def. Ex. 29); ECF No. 75-47 (Def. Ex. 42).  Specifically, Plaintiff Adkins took approved FMLA leave on March 19, 2019, with an expected return-to-work date of April 5, 2019.  ECF No. 80-22 (Pl. Ex. 21) at 1-8; ECF No. 75-34 (Def. Ex. 29).  Plaintiff Hall also took approved FMLA leave effective on April 24, 2019, with an expected return-to-work date of June 14, 2019.  ECF No. 80-22 (Pl. Ex. 21) at 9-15; ECF No. 75-47 (Def. Ex. 42).

Plaintiffs allege that, after Plaintiff Adkins returned to work on April 6, 2019, the HCPS refused to fully restore her to her position and assigned her subordinates to her prior test coordinator duties.  ECF No. 1 at ¶ 255.  Plaintiffs also allege that Plaintiff Hall was notified of her non-selection for an Assistant Principal position and demotion while she was on approved

---

[4] Plaintiff Bomar resigned her position with the HCPS on July 15, 2020, but she remained in the Secondary Assistant Principal pool after her resignation.  *See* ECF No. 75-53 (Def. Ex. 48).

FMLA leave.  *Id.* at ¶ 255-260.  And so, Plaintiffs contend that these actions constitute unlawful retaliation against them in reprisal for the use of approved FMLA leave.  *Id.* at ¶ 262.

<u>The Plaintiffs' Informal Complaints And Charges Of Discrimination</u>

In March 2019, Plaintiff Letina Hall reported race-based discriminatory treatment at the workplace to her supervisor, Dr. Abel.  *See id.* at ¶ 200.  Plaintiffs allege that Dr. Abel refused to investigate the complaint.  *Id.*

In April 2019, Plaintiff Shakera Adkins reported discriminatory workplace treatment to the HCPS.  ECF No. 75-32 (Def. Ex. 27).  The parties disagree about the outcome of this informal complaint.  Plaintiffs allege that the HCPS did not notify Plaintiff Adkins of the outcome of any investigation of her complaint, or about whether the investigation had been completed.  *See* ECF No. 1 at ¶ 197.  But, Defendants maintain that an investigation was conducted and found Plaintiff Adkins' complaint to be "unsubstantiated."  ECF No. 75-33 (Def. Ex. 28).

In June 2019, Plaintiffs filed charges of discrimination with the United States Department of Education's Office of Civil Rights on behalf of the African American women candidates involved in the 2019 Reassignment Process.  *See* ECF No. 1 at ¶ 198; ECF No. 80 at 10, 45; ECF No. 75-4 (Def. Ex. 1) at 7.  Plaintiffs filed similar charges of discrimination with the Maryland Commission on Civil Rights ("MCCR") on August 28, 2019 (Bomar and Stallings), August 29, 2019 (Adkins), and September 20, 2019 (Hall), respectively.  ECF No. 75-4 (Def. Ex. 1) at 6-7 (Bomar), 28-29 (Adkins), 48-49 (Hall), 68-69 (Stallings).  The HCPS was served with notice of these complaints on August 29, 2019 (Stallings), August 30, 2019 (Bomar, Adkins), and September 24, 2019 (Hall).  *Id.* at 1-4 (Bomar), 23-27 (Adkins), 43-47 (Hall), 63-67 (Stallings).  The EEOC issued Plaintiffs right-to-sue letters on February 24, 2021 (Bomar and Stallings), March 2, 2021 (Adkins), and March 3, 2021 (Hall), respectively.  *See* ECF No. 80-2 (Pl. Ex. 1).

**B.  Procedural Background**

Plaintiffs commenced this employment discrimination action on April 6, 2021.  ECF No. 1.  On July 20, 2021, the Court dismissed Count I of the complaint with prejudice.  ECF No. 23.

On October 29, 2023, the Defendants filed a motion for summary judgment on the remaining claims in this matter.  ECF No. 75.  On November 20, 2023, the Plaintiffs filed a response in opposition to the Defendants' motion for summary judgment.  ECF No. 80.  On December 20, 2023, the Defendants filed their reply.  ECF No. 83.

The Defendants' motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.   LEGAL STANDARDS

### A.  Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "(a) mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997) (citing *Anderson*, 477 U.S. at 247-48).

**B.  Title VII Discrimination And Retaliation Claims**

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.[5]

There are two methods for proving intentional disparate treatment discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp*., 973 F.2d 371, 374 (4th Cir. 1992)).  To overcome a summary judgment motion, a plaintiff "'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'"  *Id.* at 607 (quoting *Goldberg v. B. Green & Co., Inc*., 836 F.2d 845, 848 (4th Cir. 1988) (brackets existing)).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell-Douglas*.  *See Tuck*, 973 F.2d at 375.  Under the *McDonnell-Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell-Douglas Corp*., 411 U.S. at 802.  Relevant here, a plaintiff establishes a *prima facie* case of discrimination in hiring by showing that: "(i) [the plaintiff] belongs to a protected class, (ii) [the plaintiff] applied and was qualified for a job for which the employer was seeking applicants, (iii) despite [the plaintiff's] qualifications, [the plaintiff] was rejected, and (iv) after [the plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications."  *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001) (citing *McDonnell Douglas Corp.* 411 U.S. at 802).  A plaintiff may also establish a *prima facie* case of discrimination in a "reduction-in-force" context by showing that: "(1) [the plaintiff] was in a protected class, (2) [the plaintiff] was selected for demotion, (3) [the plaintiff] was performing her job at a level that met the employer's expectations, and (4) [the plaintiff]

---

[5] The MFEPA "is the state law analogue of Title VII."  *Alexander v. Marriott Int'l, Inc*., 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).  When a plaintiff has not asserted a distinction between a federal and Maryland discrimination claims, the Court may apply the same standards to the analysis of the state and federal discrimination claims.  *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

employer did not treat the protected status neutrally, or there were other circumstances giving rise to an inference of discrimination." *Dugan v. Albemarle Cnty. Sch. Bd*., 293 F.3d 716, 720-21 (4th Cir. 2002) (internal citations and quotations omitted).

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection, and the explanation provided must be legally sufficient to justify a judgment for the defendant. *Id.* If a defendant-employer proffers a legitimate non-discriminatory reason for the employment action at issue, the burden then shifts to the plaintiff to establish that the reason proffered by the employer is pretextual. *Id*. at 253. In doing so, a plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. *Id.* at 256.

Plaintiffs assert disparate impact claims in this case. To establish a *prima facie* case of disparate impact discrimination under Title VII, a plaintiff must "show that the facially neutral employment practice had a significantly discriminatory impact." *Anderson v. Westinghouse Savannah River Co*., 406 F.3d 248, 265 (4th Cir. 2005) (internal citations omitted); *see also E.E.O.C. v. Freeman*, 961 F. Supp. 2d 783, 791 (D. Md. 2013) (stating that to "prevail on a claim of disparate impact, a plaintiff must show that a certain class of applicants is disproportionately and adversely impacted by a particular employment practice on the basis of their race, color, religion, sex or national origin"). To make the required showing, a plaintiff must identify the "specific employment practice that is challenged" and prove that the specific employment practice caused the disparate impact on that protected class by "offer[ing] statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994-95 (1988); *Anderson*, 406 F.3d at 266. A plaintiff may use statistical evidence to make this showing. *Anderson*, 406 F.3d at 265. But, the Court is not obligated to assume that a plaintiffs' statistical evidence is reliable, and the defendant is free to "adduce countervailing evidence of his own." *Watson*, 487 U.S. at 996 (citing *Dothard v. Rawlinson*, 433 U.S. 321, 331 (1988)).

If a plaintiff establishes a *prima facie* case of disparate impact discrimination, "the employer must demonstrate that 'any given requirement [has] a manifest relationship to the employment in question,' in order to avoid a finding of discrimination," or "produc[e] evidence that its employment practices are based on legitimate business reasons." *Anderson,* 406 F.3d at 266 (internal citations omitted); *Watson*, 487 U.S. at 998. If the employer proffers legitimate reasons for the adverse employment action, the plaintiff may still prevail by showing that the employer was using the practice as a "mere pretext for discrimination." *Id.* And so, a plaintiff may establish that an employer's proffered reasons are pretextual, by establishing how "other [methods], without a similarly undesirable [discriminatory] effect, would also serve the employer's [proffered] legitimate [business] interest[.]" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975).

Lastly, Title VII also prohibits an employer from retaliating against an employee for complaining about prior discrimination or retaliation. 42 U.S.C. § 2000e-3(a). A plaintiff may prove a Title VII retaliation claim through either direct evidence of retaliatory animus, or through the *McDonnell-Douglas* framework. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015). To prevail on a retaliation claim under the *McDonnell-Douglas* framework, a plaintiff must first establish a *prima facie* case by showing that: (1) she engaged in protected activity; (2) the employer took adverse action against her; and (3) a causal relationship existed between the protected activity and the adverse employment action. *Foster*, 787 F.3d at 250 (internal citation omitted). In this regard, a "causal connection for purposes of demonstrating a *prima facie* case [of retaliation] exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (emphasis added). If a plaintiff can establish a *prima facie* case of retaliation, the burden then shifts to the defendant to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason. *Id.* (internal citation omitted). If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were pretextual[.]" *Foster*, 787 F.3d at 251 (internal citations omitted).

### C. The ADEA

The Age Discrimination in Employment Act ("ADEA") protects certain applicants and employees who are 40 years of age and older from discrimination upon the basis of age, in

hiring, promotion, discharge, compensation, or terms, conditions or privileges of employment. 29 U.S.C. § 623(a); *Westmoreland v. TWC Admin., LLC*, 924 F.3d 718, 725 (4th Cir. 2019). To establish a *prima facie* case of age discrimination, a plaintiff may proceed under the *McDonnell Douglas* framework and must prove that she: (1) was protected by the ADEA; (2) suffered an adverse employment action; (3) was performing her job at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by a substantially younger worker. *Westmoreland*, 924 F.3d at 725.

### D.  The FMLA

The Family Medical Leave Act allows eligible employees to take "12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(c). Claims can be brought under the FMLA for either interference with an entitlement to FMLA leave, or retaliation for exercising the right to FMLA leave. *Id*. at §§ 2615(a), 2617(a).

An FMLA retaliation claim is analyzed under the same burden shifting framework that applies to retaliation claims brought pursuant to Title VII. *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015) (citations omitted). And so, a plaintiff claiming FMLA retaliation must make a *prima facie* showing that: (1) plaintiff engaged in protected activity; (2) the employer took adverse action against the plaintiff; and (3) the adverse action was causally connected to the plaintiff's protected activity. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). In this regard, "[a]n adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). And so, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (internal citations omitted).

### E.  Section 1983

Lastly, under 42 U.S.C. § 1983, a plaintiff may file suit against any person, who acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See* 42 U.S.C. § 1983. To prevail on a Section 1983 claim, a plaintiff must show: (1) a right conferred by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  In an employment discrimination case where a plaintiff brings similar claims for employment discrimination "[u]nder Title VII and . . . § 1983, the elements of the required *prima facie* case are the same."  *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

## IV.  LEGAL ANALYSIS

The Defendants have moved for summary judgment on Plaintiffs' remaining employment discrimination claims in this matter upon five grounds.  First, the Defendants argue that Plaintiffs cannot prevail on their disparate treatment claims set forth in Counts III, IV, VII and VIII of the complaint, because Plaintiffs can neither show that they were not selected for an Assistant Principal position under circumstances that give rise to an inference of unlawful discrimination, nor that that the Defendants' proffered legitimate, non-discriminatory reasons for their non-selection were pretextual.  ECF No. 75-1 at 26-37.  Second, the Defendants argue that Plaintiffs' Title VII and MFEPA retaliation claims set forth in Counts V and VI of the complaint must also fail, because Plaintiffs cannot establish a causal link between their non-selection and any protected activity, or that the Defendants' proffered legitimate, non-discriminatory reasons for the alleged adverse employment actions were pretextual.  *Id*. at 38-40.

Third, the Defendants argue that Plaintiffs Adkins and Hall cannot prevail on their FMLA retaliation claims set forth in Count IX of the complaint because: (1) Plaintiffs cannot establish a causal link between their use of FMLA leave and their non-selection for an Assistant Principal position; (2) Plaintiffs cannot show that the reasons proffered by the Defendants for their non-

selection were false and pretextual; and (3) Plaintiff Adkins cannot show that her removal from the role of a test coordinator is an adverse employment action. *Id.* at 40-41.

In addition, the Defendants contend that Plaintiffs cannot prevail on their disparate impact claims set forth in Counts X and XI of the complaint, because: (1) Plaintiffs fail to identify an expert to show any statistical disparities in the 2019 Reassignment Process; (2) Plaintiffs fail to identify a discrete employment practice within the 2019 Reassignment Process that caused a discriminatory outcome; and (3) Plaintiffs cannot show that the Defendants' legitimate, non-discriminatory reason for formulating the 2019 Reassignment Process was pretextual. *Id*. at 41-46. Lastly, the Defendants argue that Plaintiffs' Section 1983 claim against Dr. Bulson set forth in Count II of the complaint must similarly fail, because he is entitled to qualified immunity with regards to that claim. *Id*. at 46-49. And so, the Defendants request that the Court grant their motion for summary judgment on the Plaintiffs' claims and dismiss the complaint. *Id*. at 49.

In their response in opposition to the Defendants' motion for summary judgment, Plaintiffs counter that summary judgment is not warranted in this case, because: (1) they have put forward evidence to establish a *prima facie* case of "discriminatory demotion," based upon race, sex and age; (2) the Defendants fail to produce a legitimate, non-discriminatory reason for demoting Plaintiffs from their Assistant Principal positions; (3) there is "overwhelming evidence" to show that the Defendants' reasons for demoting Plaintiffs and refusing to restore Plaintiffs to Assistant Principal positions were pretextual; (4) the undisputed material facts show that the Defendants engaged in unlawful retaliation against Plaintiffs; (5) Dr. Bulson is not entitled to qualified immunity with regard to Plaintiffs' Section 1983 claim; and (6) the undisputed material facts show that the 2019 Reassignment Process had a disparate impact upon African American women over the age of 40. *See generally* ECF No. 80 at 11-54. And so, Plaintiffs request that the Court deny the Defendants' motion for summary judgment. *Id.* at 54.

For the reasons that follow, the undisputed material facts in this case show that the Plaintiffs cannot show that the Defendants' legitimate, non-discriminatory reasons for demoting and/or not selecting Plaintiffs for an Assistant Principal position were a pretext for discrimination, to prevail on their disparate treatment discrimination claims. The undisputed material facts also show that Plaintiffs cannot show that the Defendants' provided legitimate,

non-retaliatory reasons for demoting and/or not selecting Plaintiffs were pretextual, to prevail on their Title VII and MFEPA retaliation claims.

In addition, the unrebutted evidence shows that Plaintiffs Adkins and Hall cannot prevail on their FMLA retaliation claims, because Plaintiff Adkins' removal from the role of a test coordinator is not an adverse employment action and Plaintiffs cannot show that the reasons provided by the Defendants for their demotion and/or non-selection were pretextual. The evidentiary record also makes clear that Plaintiffs cannot prevail on their disparate impact claims, because they cannot show that the Defendants' legitimate, non-discriminatory reasons for implementing the 2019 Reassignment Process were pretextual. Lastly, the unrebutted evidence similarly shows that Plaintiffs cannot prevail on their Section 1983 claim against Dr. Bulson, because Plaintiffs cannot prevail on any of their discrimination and retaliation claims in this case. And so, the Court: (1) GRANTS the Defendants' motion for summary judgment and (2) DISMISSES the complaint.

### A. Plaintiffs Cannot Prevail On Their Disparate Treatment Claims

As an initial matter, the undisputed material facts in this employment discrimination matter show that Plaintiffs cannot prevail on their disparate treatment claims, because they cannot show that the Defendants' legitimate, non-discriminatory reasons for demoting and/or not selecting Plaintiffs for an Assistant Principal Position were pretextual. To prevail on their disparate treatment claims, Plaintiffs must first establish a *prima facie* case of discrimination by showing that: (1) they belong to a protected class; (2) they applied and were qualified for a job for which the employer was seeking applicants; (3) despite their qualifications, Plaintiffs were rejected; and (4) after their rejection, the position remained open and the employer continued to seek applicants from persons of their qualifications. *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Plaintiffs establish a *prima facie* case of discrimination, the burden shifts to the Defendants to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the Defendants proffer a legitimate, non-discriminatory reason for their employment action, the burden then shifts to the Plaintiffs to establish that the reason proffered by the employer is pretextual. *Id*. at 253. In doing so,

Plaintiffs must demonstrate that the proffered reason was not the true reason for the employment decision. *Id.* at 256.

The Court first observes that Defendants argue without persuasion that Plaintiffs disparate treatment claims must fail, because Plaintiffs cannot show that they were demoted and/or not selected for an Assistant Principal position under "circumstances giving rise to an inference of discrimination." ECF No. 75-1 at 29. As the Defendants correctly argue, Plaintiffs must show, among other things, that they were demoted, and/or not selected for an Assistant Principal position, under circumstances giving rise to an inference of discrimination to prevail on these claims. *Dugan v. Albemarle Cnty. Sch. Bd.,* 293 F.3d 716, 720–21 (4th Cir. 2002) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802; *Sears Roebuck and Co.*, 243 F.3d at 851 n.2 ("What is critical with respect to the fourth element is that the plaintiff demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'") (internal citation omitted). The evidentiary record before the Court shows that Plaintiffs can meet this burden.

Plaintiffs are African American women over the age of 40 and they allege in this employment discrimination matter that they were treated disparately during the 2019 Reassignment Process, based upon the combination of their race, gender and age. ECF No. 1 at ¶¶ 170-302; ECF No. 80 at 14-15, 51-54. As Plaintiffs correctly observe, the undisputed material facts in this case show that none of the Assistant Principals hired during the 2019 Reassignment Process identify as African American women over the age of 40. *See* ECF No. 75-8 (Def. Ex. 5) at 15; ECF No. 75-23 (Def. Ex. 18); ECF No. 75-24 (Def. Ex. 19). The unrebutted evidence also shows that 86 percent of the candidates considered in the 2019 Reassignment Process who were under the age of 40 were selected for Assistant Principal positions. ECF No. 75-23 (Def. Ex. 18).

The deposition testimony of the HCPS Associate Superintendent for Human Resources Jean Mantegna also shows that Ms. Mantegna raised concerns to Dr. Bulson about the potential disparate impact of the 2019 Reassignment Process on African American candidates, based upon her review of the candidates' interview scores during the 2019 Reassignment Process. ECF No. 80-5 (Pl. Ex. 4, Mantegna Dep.) at 106:14–107:3. There is also evidence before the Court to show that certain former HCPS School Board members met with Dr. Bulson to express concerns that the 2019 Reassignment Process was discriminatory with regards to African American

candidates.  ECF No. 80-3 (Pl. Ex. 2, Bulson Dep.) at 154:8–155:18.

      While these undisputed material facts do not *prove* the Plaintiffs' disparate treatment claims, they are sufficient to show that Plaintiffs were demoted and/or not selected for an Assistant Principal position under "circumstances giving rise to an inference of discrimination." And so, the Court is satisfied that Plaintiffs can meet this threshold element of their disparate treatment claims.

      Plaintiffs' disparate treatment claims are, nonetheless, problematic, because Plaintiffs do not put forward any facts or evidence to show that the legitimate, non-discriminatory reasons provided by the Defendants for demoting and/or not selecting them for an Assistant Principal position were false, or a pretext for unlawful discrimination.  The Defendants state that the Plaintiffs were demoted and/or not selected for the Assistant Principal positions at issue, because the candidates selected for these positions "were regarded by the hiring panels as superior to the Plaintiffs, based upon the factors considered in the 2019 AP Reassignment Process–the interview scores, supervisor recommendations, and the top-five lists."  ECF No. 75-1 at 31.  To support this reason, the Defendants point to undisputed material facts showing that the decisionmakers for selecting Assistant Principals considered the following information during the 2019 Reassignment Process: (1) the candidates' interview scores; (2) Principals' top-five lists; (3) and supervisory references during the 2019 Reassignment Process.  *See* Mantegna Dep. (ECF No. 75-7) (ECF No. 80-5) at 64:20–75:3, 82:4–85:3, 105:1-9; Schmitz Dep. (ECF No. 75-12) at 52:11–55:16, (ECF No. 80-4) 59:2–63:19; Bulson Dep. (ECF No. 75-5) (ECF No. 80-3) at 82:4-100:2; Vaught Dep. (ECF No. 75-6) (ECF No. 80-29) at 45:3-19, 46:9–51:2, 73:12–75:10.

      The Defendants also point to undisputed material facts in this case showing that Plaintiffs received lower interview scores than many of the candidates who were ultimately selected for the Assistant Principal positions, and that Plaintiffs also received less favorable supervisory references than these successful candidates.  In this regard, it is undisputed that Plaintiff Adkins: (1) received a cumulative interview score of 702, ranking her 35th out of 39 candidates at the Elementary level; (2) received a supervisory reference of "recommend with reservations[;]" and (3) did not appear on any Principal's top-five list.  ECF No. 75-25 (Def. Ex. 20); ECF No. 75-26 (Def. Ex. 21); *see* ECF No. 75-20 (Def. Ex. 16); ECF No. 75-21, 75-22 (Def. Ex. 17); ECF No. 75-28 (Def. Ex. 23, Adkins Dep.) at 87:14–96:20.  However, the comparators identified by Plaintiffs who participated in the Elementary level interviews had the following outcomes: (1)

Jennifer Vlangas (Caucasian, Female, Over 40) received a cumulative interview score of 838, received a supervisory reference of "recommend [for hire]," and appeared on two Principals' top-five candidate lists and (2) Anjanette Cook (American Indian/Alaskan Native, Female, Over 40) received a cumulative score was 639, received a supervisory reference of "recommend [for hire]," and appeared as the first choice on her then-immediate supervisor's top-five candidate list. *See* ECF No. 75-20 (Def. Ex. 16) at 16; ECF No. 75-21 (Def. Ex. 17) at 31, 49; ECF No. 75-23 (Def. Ex 18) at 4. It is also undisputed that Plaintiff Bomar: (1) received a cumulative interview score of 501, ranking her 17th out of 53 candidates at the Secondary level; (2) received a supervisory reference of "do not recommend for hire[;]" and (3) appeared on two Principals' top-five lists. *See* ECF No. 75-35 (Def. Ex. 30); ECF No. 75-36 (Def. Ex. 31); ECF Nos. 75-18, 75-19 (Def. Ex. 15); ECF No. 75-17 (Def. Ex. 14). It is similarly undisputed that Plaintiff Hall: (1) received a cumulative interview score of 436, ranking her 45th out of 53 candidates at the Secondary level; (2) received a supervisory reference of "recommend with reservations[;]" and (3) appeared on one Principal's top-five list. *See* ECF No. 75-41 (Def. Ex. 36). ECF No. 75-42 (Def. Ex. 37); ECF No. 75-18 (Def. Ex. 15) at 34; ECF No. 75-17 (Def. Ex. 14) at 16. Lastly, the parties agree that Plaintiff Stallings (1) received a cumulative interview score of 360, ranking her 52nd out of 53 candidates at the Secondary level; (2) received a supervisory reference of "recommend" for hire; and (3) did not appear on any Principal's top-five list or top-five list for shared positions. *See* ECF No. 75-48 (Def. Ex. 43); ECF No. 75-49 (Def. Ex. 44); ECF No. 75-18, 75-19 (Def. Ex. 15); ECF No. 75-17 (Def. Ex. 14).

By comparison, the comparators identified by Plaintiffs who participated in the Secondary level interviews had the following outcomes: (1) Melissa McKay (Caucasian, Female, Over 40) received a cumulative interview score of 485, a supervisory reference of "recommend [for hire]," and she appeared as the top candidate on her then-immediate supervisor's top-five shared candidates list and top-five candidate list; (2) Drew Hoagland (Caucasian, Male, 40) received a cumulative interview score of 445, a supervisory reference of "recommend [for hire]," and he appeared on at least two Principals' top-five candidate lists; and (3) John Siemsen (Caucasian, Male, Over 40) received a cumulative score of 419, a supervisory reference of "recommend [for hire]," and was ranked second on at least one Principal's top-five candidate list. *See* ECF No. 75-17 (Def. Ex. 14) at 3, 11, 16, 23; ECF No. 75-19 (Def. Ex. 15) at 16; ECF No. 75-23 (Def. Ex. 18) at 3; ECF No. 75-24 (Def. Ex. 19) at 2.

Given this evidence, there can be no genuine dispute that Plaintiff Adkins received a less favorable interview score than Ms. Vlangas, and less favorable supervisory references and top-five list appearances than Ms. Vlangas and Ms. Cook.  S*ee* ECF No. 75-20 (Def. Ex. 16) at 16; ECF No. 75-21 at 31, 49, 75-22 (Def. Ex. 17); ECF No. 75-23 (Def. Ex 18) at 4; ECF No. 75-25 (Def. Ex. 20); ECF No. 75-26 (Def. Ex. 21); ECF No. 75-28 (Def. Ex. 23, Adkins Dep.) at 87:14–96:20.  The undisputed material facts also make clear that Plaintiffs Bomar and Hall each received a less favorable supervisory reference than all three of the successful Secondary level candidates, Ms. McKay, Mr. Hoagland, and Mr. Siemsen.  *See* ECF No. 75-17 (Def. Ex. 14) at 3, 11, 16, 23; ECF No. 75-18 (Def. Ex. 15) at 34; ECF No. 75-19 (Def. Ex. 15) at 16; ECF No. 75-23 (Def. Ex. 18) at 3; ECF No. 75-24 (Def. Ex. 19) at 2; ECF No. 75-35 (Def. Ex. 30); ECF No. 75-36 (Def. Ex. 31); *See* ECF No. 75-41 (Def. Ex. 36). ECF No. 75-42 (Def. Ex. 37).  In addition, Plaintiffs Hall and Stallings received lower interview scores, and appeared in fewer Principals' top-five lists than Ms. McKay and Mr. Hoagland.  *See* ECF No. 75-17 (Def. Ex. 14) at 3, 11, 16, 23; ECF No. 75-18 (Def. Ex. 15) at 34; ECF No. 75-19 (Def. Ex. 15) at 16; ECF No. 75-23 (Def. Ex. 18) at 3; ECF No. 75-24 (Def. Ex. 19) at 2; ECF No. 75-41 (Def. Ex. 36); ECF No. 75-42 (Def. Ex. 37); ECF No. 75-49 (Def. Ex. 44); ECF No. 75-48 (Def. Ex. 43).  And so, the undisputed material facts support the Defendants' stated reasons for demoting and not selecting Plaintiffs for an Assistant Principal position during the 2019 Reassignment Process. *Love v. Alamance County School Bd*., 757 F.2d 1504, 1507 (4th Cir. 1985) ("Selection of a more highly qualified applicant is a non-discriminatory reason for rejecting another applicant.").

The undisputed material facts also make clear that Plaintiffs cannot meet their burden to show that the Defendants' legitimate, non-discriminatory reasons for demoting and not selecting them for an Assistant Principal position were false and a pretext for unlawful discrimination.  *See Burdine*, 450 U.S. at 254; *see also Anderson*, 406 F.3d at 269 ("a plaintiff may establish pretext by proving that the defendant's explanation for an employment decision is 'unworthy of credence' or that the defendant's explanation is false") (internal citation omitted).  Plaintiffs advance the following seven arguments to show that the reasons offered by the Defendants for their demotion and non-selection were pretextual: (1) the Defendants failed to employ the HCPS' RIF Procedure; (2) the Defendants violated the HCPS' policies and procedures by refusing to implement the RIF Procedure, which requires that decisionmakers reduce or eliminate individuals from their administrative positions based upon qualifications, work performance and

length of service; (3) the 2019 Reassignment Process did not require decision makers to select candidates based on non-discriminatory factors; (4) the Defendants refused to investigate concerns of discrimination; (5) the Defendants offer no evidence of a deliberative process; (6) the Plaintiffs' immediate supervisors produced false and/or misleading information regarding Plaintiffs' work performance; and (7) similarly situated individuals outside of the Plaintiffs' protected classes were treated more favorably than Plaintiffs during the 2019 Reassignment Process. *See* ECF No. 80 at 25-43.

None of these arguments are supported by the evidence in this case. First, while Plaintiffs argue that Dr. Bulson's decision not to use the RIF Procedure and to implement the 2019 Reassignment Process was motivated by discretionary animus, rather than budgetary concerns, their argument is rebutted by evidence showing that the HCPS determined that there would be a budget shortfall for the 2019-20 school year and that Dr. Bulson decided to cut school personnel "to balance [the budget] to the best we could proportionately with personnel in the district." *See* ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 20:17–26:4; ECF No. 80-3 (Pl. Ex. 2, Bulson Dep.) at 20:13–21:1, 35:13–35:16; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 28:20–36:6. The evidence that Plaintiffs rely upon to show that there was not actually a budget shortfall occurred during the 2019-20 school year is also not sufficient to establish that Dr. Bulson's stated reasons for conducting the 2019 Reassignment Process were false, because this evidence is based on information that was not available until after Dr. Bulson made the decision to implement the 2019 Reassignment Process. *See* ECF No. 80 at 27, n.11 (citing ECF No. 80-3 (Pl. Ex. 2, Bulson Dep.) at 28:18–29:10; Erika Butler, "After Tightening Purse Strings, Harford schools end fiscal year with $7.5 million surplus," Baltimore Sun (Sept. 24, 2019); Amy Simpson "The Board of Education now has a $93 million surplus[,]" Fox Baltimore (Apr. 19, 2023)).

Plaintiffs similarly advance no evidence to show either that the RIF Procedure would have produced a different outcome with regards to their selection for an Assistant Principal position, or that their immediate supervisors provided false and/or misleading supervisory references during the 2019 Reassignment Process. In this regard, Plaintiffs rely upon the deposition testimony of their supervisors to show certain discrepancies existed between the supervisory references provided for the 2019 Reassignment Process and their past performance evaluations. ECF No. 80 at 30-35. But, to the extent that any such discrepancies existed, they

do not aid Plaintiffs claims here, because it is undisputed that past performance evaluations were not among the information considered by the decisionmakers during the 2019 Reassignment Process. *See* ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 90:3-11, 96:10–97:1; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 85:15-20, 86:17–91:11; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 73:12-18, 74:1–78:5; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 101:2–102:16.

Plaintiffs' reliance upon Ms. Mantegna's deposition testimony regarding her concerns that the 2019 Reassignment Process had a discriminatory impact on African American candidates is also misplaced. ECF No. 80 at 9 (citing ECF No. 80-5 (Pl. Ex. 4, Mantegna Dep.) at 106:14–108:21). As Plaintiffs correctly observe, Ms. Mantegna testified during her deposition that she initially had a "concern in terms of the number of African Americans were being reassigned." ECF No. 80-5 (Pl. Ex. 4 Mantegna Dep.) at 106:18–107:3. But, Ms. Mantegna also testified that her "conclusion" that "some disparate impact that could be inferred from looking at the data . . . was . . . unfounded" and she "was never concerned that there was discrimination in the process." *Id*. at 106:19–107:12; 117:18-19.

Plaintiffs' argument that there is evidence of pretext in this case, because Dr. Bulson refused to investigate the concerns raised by former HCPS Board Members about discrimination during the 2019 Reassignment Process, is also unsupported by the evidence. Notably, Dr. Bulson testified during his deposition that he engaged in additional conversations regarding the outcomes of the 2019 Reassignment Process, after learning of concerns about discrimination during the 2019 Reassignment Process, to "better understand the impact" of race in the process, and took steps "to get the counts by how people identify racially and be aware of what the impact of the process ultimately was with regard to the number of people who were affected so we could understand what the impact was" after his conversation with the former School Board members. *See* ECF No. 80-3 (Pl. Ex. 3, Bulson Dep.) at 156:2-158:6.

Given this evidence, Plaintiffs simply cannot show that the Defendants' legitimate, non-discriminatory reasons for demoting and not selecting them for an Assistant Principal position were pretextual. Nor can Plaintiffs create a genuine issue of fact regarding whether the Defendants' proffered reasons for the demotion and non-selection were false or unworthy of credence. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217 (4th Cir.2007) (quoting *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir.1998)). For this reason, the Court GRANTS the Defendants' motion for summary judgment on Plaintiffs' disparate treatment claims.

**B.  Plaintiffs Cannot Prevail On Their Title VII And MFEPA Retaliation Claims**

The Defendants also persuasively argue that Plaintiffs cannot prevail on their retaliation claims brought pursuant to Title VII and the MFEPA.  To prevail on these claims, Plaintiffs must establish a *prima facie* case by showing that: (1) they engaged in protected activity; (2) the Defendants took adverse action against them; and (3) a causal relationship existed between the protected activity and the adverse employment action.  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal citation omitted).  A "causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity."  *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (emphasis added).  As with their disparate treatment claims, if Plaintiffs establish a *prima facie* case of retaliation, the burden shifts to the Defendants to show that the purportedly retaliatory action was, in fact, the result of a legitimate non-retaliatory reason.  *Id.* (internal citation omitted).  If the Defendants make this showing, the burden shifts back to Plaintiffs to show that that their employer's purported non-retaliatory reason was pretextual.  *Foster*, 787 F. 3d. at 251 (internal citations omitted).

Applying these standards here, the Defendants have shown that Plaintiffs cannot establish that the Defendants' stated legitimate, non-discriminatory reasons for demoting and/or not selecting Plaintiffs were a pretext for unlawful retaliation.  In this case, Plaintiffs allege the following three adverse employment actions in support of their Title VII and MFEPA retaliation claims: (1) Plaintiffs' demotion and non-selection for Assistant Principal positions during the 2019 Reassignment Process; (2) Plaintiff Bomar's non-selection for the Aberdeen High School Assistant Principal position in August 2019; and (3) the non-selection of Plaintiffs Bomar and Stallings for an Assistant Principal position during summer of 2020.  *See* ECF No. 1 at ¶¶ 194-221; ECF No. 80 at 44-45.  Plaintiffs also maintain that they engaged in the following protected activities: (1) Plaintiffs Adkins and Hall made internal reports of discriminatory treatment in April 2019 and March 2019, respectively; (2) Plaintiffs filed complaints of discrimination with the United States Department of Education's Office of Civil Rights in June 2019; and (3) Plaintiffs filed complaints of discrimination with the Maryland Commission on Civil Rights in August 2019.  *Id.*; *see also* ECF No. 75-4 (Def. Ex. 1) at 7; ECF No. 80-2 (Pl. Ex. 1); ECF No. 75-4 (Def. Ex. 1) at 6-7.

As discussed above, the undisputed material facts show that the Defendants decided to

demote and/or not select Plaintiffs for an Assistant Principal position during the 2019 Reassignment Process, because other qualified candidates received superior cumulative interview scores and references than Plaintiffs, based upon the criteria that the HCPS used to fill these positions. *See* Mantegna Dep. (ECF No. 75-7) (ECF No. 80-5) at 64:20–75:3, 82:4–85:3, 105:1-9; Schmitz Dep. (ECF No. 75-12) at 52:11–55:16, (ECF No. 80-4) 59:2–63:19; Bulson Dep. (ECF No. 75-5) (ECF No. 80-3) at 82:4-100:2; Vaught Dep. (ECF No. 75-6) (ECF No. 80-29) at 45:3-19, 46:9–51:2, 73:12–75:10.  And so, Plaintiffs cannot show that the reasons for their demotion and/or non-selection during the 2019 Reassignment Process were a pretext for retaliation.

The Defendants also provide legitimate, non-retaliatory reasons for Plaintiff Bomar's non-selection for an Assistant Principal position at Aberdeen High School in August 2019 and for the subsequent non-selection of Plaintiffs Bomar and Stallings for an Assistant Principal position during the summer of 2020.  The Defendants state that the HCPS selected other candidates for these Assistant Principal positions based on the superior qualifications of the successful candidates and the needs of the specific schools at that time.[6]  *See* ECF No. 75-53 (Def. Ex. 48); ECF No. 75-56 (Def. Ex. 51); ECF No. 75-53 (Def. Ex. 48) at 4-5; ECF No. 75-37 (Def. Ex. 32, Mack Dep.) at 72:7-12; ECF No. 75-43 (Def. Ex. 38, Abel Dep.) at 64:8–65:5.  The Defendants' stated reasons are supported by the evidence.

With regards to the Assistant Principal position at Aberdeen High School, it is undisputed that the candidates who were in the Secondary Assistant Principal pool during the 2019 Reassignment Process were considered for the Assistant Principal position at Aberdeen High School in August 2019, and that Plaintiff Bomar, who was identified as the choice of that school's Principal, was one of the candidates considered for this position.  ECF No. 75-53 (Def. Ex. 48) at 4; ECF No. 80-12 (Pl. Ex. 11, Quigg Dep.) at 27:18–33:15.  The undisputed material facts show that the decisionmakers for filling this position testified that Plaintiff Bomar did not have a math background and that she was not certified in math, which was considered a weakness, given the needs of the school.  ECF No. 75-54 (Def. Ex. 49, O'Brien Dep.) at 33:17–

---

[6] It is undisputed that the HCPS appointed the following individuals to Assistant Principal positions between July 1, 2019, and December 31, 2022: Monisha Thomas (African American, Female), Nitrease Quickley (African American, Female, Over 40), Erik Snyder (Caucasian, Male, Over 40), Kristina Marzullo (Caucasian, Female, Over 40), Theodore Childs (Caucasian, Male, Under 40).  *See* ECF No. 75-53 (Def. Ex. 48) at 4.

34:12; ECF No. 75-55 (Def. Ex. 50, Quigg Dep.) at 41:19–42:1.  The decisionmakers also determined that another candidate, Monisha Thomas, was the best candidate for the position at that time because: (1) she had a math background and since Aberdeen High School had a math and science academy, it is an advantage to have administrators with a "math and science perspective" and (2) she came from Aberdeen Middle School and knew the families and the students. ECF No. 75-54 (Def. Ex. 49, O'Brien Dep.) at 33:4-16.  And so, Ms. Thomas was selected for the position.  ECF No. 75-53 (Def. Ex. 48) at 5.

The undisputed material facts regarding the filling of the four Assistant Principal positions at Bel Air High School, Edgewood High School, Joppatowne High School and Patterson Mill Middle/High School also show that Plaintiffs Bomar and Stallings were not selected for these positions for legitimate, non-discriminatory reasons.  *See* ECF No. 75-53 (Def. Ex. 48) at 5.  In this regard, it is undisputed that Principal Kilo Mack participated in the interviews for these positions and that he did not consider Plaintiff Bomar for the opening at Edgewood High School, due to his prior negative experiences with Plaintiff Bomar.  ECF No. 75-37 (Def. Ex. 32, Mack Dep.) at 72:7-12.  Principal Abel also participated in the interviews for these positions and he testified that he was looking only for male candidates, because "the other two Assistant Principals who were still there were female" and "there's so many search situations and [locker] room issues that need to be dealt with" and "searches can only be done by administrators."  ECF No. 75-43 (Def. Ex. 38, Abel Dep.) at 64:8 –65:5.[7]

Plaintiffs fail to rebut the Defendants' stated reasons for their non-selection for these positions with evidence to show pretext.  Plaintiffs contend that their non-selection for these positions was in retaliation for engaging in prior protected activity, because: (1) "there is no evidence that Ms. Stallings' qualifications were reviewed during or after the 2019 process, or that she was considered for an [A]ssistant [P]rincipal position during or following the 2019 process, even though her performance was 'highly effective'" and (2) Joshua Clemmer was selected as an Assistant Principal at Edgewood High School during the 2020 process, even though Mr. Clemmer would have a "'steep learning curve,'" and "would require assistance from experienced administrators to perform his duties satisfactorily," and Plaintiff also observed that

---

[7] Plaintiff Stallings declined to submit application materials in response to Assistant Principal positions openings in June and November 2021 and to remain in the Assistant Principal candidate pool when her membership term in the candidate pool expired on June 30, 2022.  *See* ECF No. 75-53 (Def. Ex. 48); ECF No. 75-58 (Def. Ex. 53).

he had not engaged in protected activity.  ECF No. 80 at 49 (citing ECF No. 75-56 (Def. Ex. 51) at 3).  But, the unrebutted evidence shows that Plaintiff Stallings was, in fact, considered for an Assistant Principal position during the 2019 Reassignment Process and that she also submitted materials for consideration for the four open positions that subsequently were filled.  *See* ECF No. 75-48 (Def. Ex. 43); ECF No. 75-49 (Def. Ex. 44); ECF No. 75-50 (Def. Ex. 45, Reynolds Dep.) at 46:5–48:2; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 148:16–150:5; ECF Nos. 75-18, 75-19 (Def. Ex. 15); ECF No. 75-17 (Def. Ex. 14); ECF No. 75-51 (Def. Ex. 46).  More importantly, Plaintiffs put forward no evidence to support their argument that Plaintiff Stallings was not considered for these positions.

Plaintiffs similarly fail to put forward evidence to support their claim that Mr. Clemmer should not have been selected for an Assistant Principal position at Edgewood High School, because he lacked the necessary qualifications for the position.  ECF No. 80 at 49 (citing ECF No. 75-56 (Def. Ex. 51) at 3).  Because there is no evidence before the Court to show that the Defendants' stated legitimate, non-retaliatory reasons for not selecting Plaintiffs for an Assistant Principal position in this case are unworthy of credence and, thus, pretextual, the Court must also GRANT the Defendants' motion for summary judgment on Plaintiffs' Title VII and MFEPA retaliation claims.

### C.  Plaintiffs Adkins And Hall Cannot Prevail On Their FMLA Retaliation Claims

Plaintiffs' FMLA retaliation claims are similarly problematic.  To prevail on their FMLA retaliation claims, Plaintiffs must show, among other things, that they suffered an adverse employment action.  *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006).  In this regard, the Fourth Circuit has held that "an adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

In addition, Plaintiffs must show that the alleged adverse action was causally connected to their protected activity.  *Yashenko*, 446 F.3d at 551.  Lastly, the Fourth Circuit has held that, when a defendant employer offers "a great deal of evidence explaining its reasons for [the adverse employment action], none of which relate to [the Plaintiff's] FMLA leave," and the

plaintiff only proffers evidence consistent with the defendant's reasons, the plaintiff cannot prove that defendant's reasons were pretextual.  *Yashenko*, 446 F.3d at 551.

In this case, there is no dispute that Plaintiff Adkins took approved FMLA leave on March 19, 2019, with an expected return-to-work date of April 5, 2019.  ECF No. 75-34 (Def. Ex. 29).  It is similarly undisputed that Plaintiff Hall took approved FMLA leave effective on April 24, 2019, with an expected return-to-work date of June 14, 2019.  ECF No. 75-47 (Def. Ex. 42).  Plaintiffs allege that the Defendants took following adverse employment actions after their use of FMLA leave: (1) after Plaintiff Adkins returned to work on April 6, 2019, the HCPS refused to fully restore Plaintiff Adkins to her testing coordinator duties when she returned to work; (2) Plaintiff Hall was notified of her non-selection for an Assistant Principal position and her demotion while she was on approved FMLA leave; and (3) Plaintiffs were not selected for Assistant Principal positions during, or after, the 2019 Reassignment Process.  ECF No. 1 at ¶ 255-260.

As the Defendants persuasively argue, Plaintiff Adkins cannot prevail on her FMLA retaliation claim based upon the HCPS' decision not to restore her to duties as a test coordinator, is not an adverse employment action within the context of the FMLA.  In fact, Plaintiffs put forward no evidence to show that the removal of Plaintiff Adkins' test coordinator duties resulted in a significant change in her employment, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or caused a significant change in benefits.  ECF No. 75-31 (Def. Ex. 26).  Given this, the undisputed material facts make clear that Plaintiff Adkins cannot prevail on this aspect of her FMLA retaliation claim.  *Hoyle*, 650 F.3d at 337 (citing *Ellerth*, 524 U.S. at 761).

The undisputed material facts also make clear that Plaintiffs cannot show a causal connection between their 2019 FMLA leave and their subsequent non-selection for Assistant Principal positions in August 2019 and thereafter.  As the Fourth Circuit has recognized, "[e]vidence as to the closeness in time . . . certainly satisfies the less onerous burden of making a *prima facie* case of causality'" for an FMLA retaliation claim.  *Yashenko*, 446 F.3d at 551 (citing *Williams*, 871 F.2d at 457).  But, in this case, the evidence shows that Plaintiffs Adkins and Hall took FMLA leave in the spring of 2019 and that their non-selections occurred several months later, when they were not chosen for the Assistant Principal positions that were filled in August 2019 and in the summer of 2020.  Given this, the Defendants argue with persuasion that the

adverse employment actions alleged are too temporally remote for Plaintiffs to establish a causal link between their FMLA leave and the non-selections.

The Court also observes that, to the extent that Plaintiffs Adkins and Hall could establish a *prima facie* case of FMLA retaliation based upon their demotion and non-selection for an Assistant Principal position during or after the 2019 Reassignment Process, their retaliation claims must also fail, because they cannot show that the Defendants' stated reasons for not selecting Plaintiffs were a pretext for FMLA retaliation.  As discussed above, the undisputed material facts show that Plaintiffs were not selected for an Assistant Principal position during the 2019 Reassignment Process, because the candidates selected for these positions were regarded by the hiring panels as superior to the Plaintiffs, based upon their interview scores, supervisory references and placement on the top-five lists.  ECF No. 75-1 at 31; s*ee* Mantegna Dep. (ECF No. 75-7) (ECF No. 80-5) at 64:20–75:3, 82:4–85:3, 105:1-9; Schmitz Dep. (ECF No. 75-12) at 52:11–55:16, (ECF No. 80-4) 59:2–63:19; Bulson Dep. (ECF No. 75-5) (ECF No. 80-3) at 82:4-100:2; Vaught Dep. (ECF No. 75-6) (ECF No. 80-29) at 45:3-19, 46:9–51:2, 73:12–75:10.  As also discussed above, the undisputed material facts show that the Defendants' decisions not to hire Plaintiffs for subsequent Assistant Principal positions in August 2019, and thereafter, were based upon the evaluation criteria for those positions and the needs of the school.  *See* ECF No. 75-54 (Def. Ex. 49, O'Brien Dep.) at 33:4-16; ECF No. 75-37 (Def. Ex. 32, Mack Dep.) at 72:7-12; ECF No. 75-43 (Def. Ex. 38, Abel Dep.) at 64:8–65:5.

While Plaintiffs understandably disagree with the Defendants' hiring decisions, they fail put forward evidence to rebut these facts and to establish pretext.  And so, the Court must also GRANT the Defendants' motion for summary judgment on Plaintiffs FMLA retaliation claims.

### D.  Plaintiffs' Disparate Impact Claims Fail Because They Cannot Show Pretext

The unrebutted evidence in this case similarly shows Plaintiffs cannot prevail on their disparate impact claims set forth in Counts X and XI of the complaint.  *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 998 (1988); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975).  To the extent that Plaintiffs can establish a *prima facie* case of disparate impact discrimination in this case, the Defendants have produced evidence that their employment practices were based on legitimate business reasons that Plaintiffs fail to rebut.  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 266 (4th Cir. 2005) (internal citations omitted); *Watson*, 487 U.S. at 998.

Plaintiffs identify two practices or procedures that were employed during the 2019 Reassignment Process that they allege had a disparate impact on African American women over the age of 40, namely: (1) the use of the Principals' top-five lists, which Plaintiffs contend is "entirely subjective" and "disparately impacted African American women above age 40," and (2) the failure to limit the Executive Directors "to any specific factors to determine the candidates which would be forwarded to Superintendent Bulson [for hire]."  ECF No. 80 at 53.  And so, contrary to the Defendants' argument in their motion for summary judgment, Plaintiffs do challenge specific practices during the 2019 Reassignment Process to support their disparate impact claims.[8]

But the Defendants have provided legitimate, non-discriminatory business reasons for these challenged practices that Plaintiffs fail to rebut with evidence to show pretext.  Notably, Dr. Bulson testified during his deposition that, when he decided to implement the 2019 Reassignment Process, it was important to him that school leaders had an opportunity to have input about who was hired, so that the HCPS could "construct teams that could serve the school best, knowing there were fewer overall administrators to do that[.]"  *See* ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 68:20–69:4; 70:6-20.  It is also undisputed that Dr. Bulson delegated the task of developing the 2019 Reassignment Process to the HCPS Human Resources Department, "to be sure every candidate had an opportunity for equal consideration by all of the Principals" and that "[Dr. Bulson] required the Principals to commit to considering every candidate who applied at their level."  ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 76:15–77:3, 80:9-21; *see also* ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 66:3–67:7.

The undisputed material facts also show that the Executive Directors' review of candidate applications included working with individual Principals to establish who would ultimately be assigned to the Assistant Principal positions, "based as much as possible upon the Principals' recommendations."  *See* ECF No. 75-8 (Def. Ex. 5) at 13-14; ECF No. 75-5 (Def. Ex. 2, Bulson Dep.) at 83:18–84:5; ECF No. 75-7 (Def. Ex. 4, Mantegna Dep.) at 65:16-18, 67:13-20; ECF No. 75-12 (Def. Ex. 9, Schmitz Dep.) at 62:11–63:15; ECF No. 75-6 (Def. Ex. 3, Vaught Dep.) at 47:6–51:2.  Given these facts, the evidence before the Court shows that the Defendants'

---

[8] Plaintiffs also provided a statistic showing that no African American women over age 40 were selected for an Assistant Principal position during the 2019 Reassignment Process.  ECF No. 80 at 53.

decisions to employ a top-five list, and to consider the recommendations of school Principals, in making hiring decisions were based upon the stated legitimate, non-discriminatory business reasons.

Plaintiffs, again, fail to put forward any evidence to show that the Defendants' stated legitimate business reasons were pretextual. Notably, Plaintiffs do not advance any evidence to show that "other [methods for selecting Assistant Principals], without a similarly undesirable [discriminatory] effect, would also serve the employer's [proffered] legitimate [business] interest[.]" *Albemarle Paper Co.*, 422 U.S. at 425. While Plaintiffs do correctly observe that the HCPS had an existing RIF Procedure at the time of the 2019 Reassignment Process, they neither provide evidence to show that the RIF Procedure would have resulted in the selection of Plaintiffs for an Assistant Principal position, nor provide evidence to show that the RIF Procedure would have satisfied the Defendants' legitimate interest in incorporating the views and recommendation of school Principals into the selection process. *See* ECF No. 75-2 (Def. Ex. 2, Bulson Dep.) at 42:17–46:20, 49:4–50:3; ECF No. 75-2 (Def. Ex. 2, Bulson Dep.) at 26-29; *see also* ECF No. 80.

Given this, the Court agrees with Defendants that Plaintiffs cannot show pretext, to prevail on their disparate impact claims. And so, the Court must also GRANT Defendants' motion for summary judgment on these claims.

### E. Defendant Bulson Is Entitled To Summary Judgment On Plaintiffs' Section 1983 Claims

As a final matter, the undisputed material facts in this case also show that Plaintiffs cannot prevail on their Section 1983 claim against Dr. Bulson. As the Fourth Circuit has long held, Title VII principles apply to employment discrimination claims brought under Section 1983. *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (holding that Section 1983 claims should be analyzed using Title VII's methods of proof). And so, where, as is the case here, a Title VII plaintiff brings similar claims for employment discrimination under Title VII and Section 1983, the elements of the *prima facie* case are the same. *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

To prevail on their Section 1983 claim here, Plaintiffs must show, among other things, that Dr. Bulson's decisions to implement the 2019 Reassignment Process, and to demote and not select them for an Assistant Principal position, were motivated by discriminatory intent or

retaliatory animus.  *Sears Roebuck & Co.*, 243 F.3d at 851; *Dugan*, 293 F.3d at 720–21; *Yashenko*, 446 F.3d at 551; *Anderson*, 406 F.3d at 265.  But, as discussed above, Plaintiffs cannot make such a showing in this case, because they either cannot establish a *prima facie* case of discrimination or retaliation, or cannot show that the Defendants' stated legitimate, non-discriminatory and non-retaliatory reasons for the challenged employment decisions were a pretext for unlawful discrimination or retaliation.  For this reason, the Court also GRANTS the Defendants' motion for summary judgment on this final claim.

## V.    CONCLUSION

In sum, the undisputed material facts in this case show that Plaintiffs cannot demonstrate that the Defendants' legitimate, non-discriminatory reasons for demoting and/or not selecting them for an Assistant Principal position were false and pretextual, to prevail on their disparate treatment claims.  The undisputed material facts also show that Plaintiffs cannot show that the Defendants' proffered reasons for demoting and/or not selecting Plaintiffs for an Assistant Principal position were a pretext for unlawful retaliation, to prevail on their Title VII and MFEPA retaliation claims.

In addition, the unrebutted evidence in this case makes clear that Plaintiffs Adkins and Hall cannot prevail on their FMLA retaliation claims, because Plaintiff Adkins' removal from the role of a test coordinator is not an adverse employment action and Plaintiffs cannot show that the reasons provided by the Defendants for their demotion and/or non-selection were a pretext for unlawful FMLA leave retaliation.  The evidentiary record also makes clear that Plaintiffs cannot prevail on their disparate impact claims, because they cannot show that the Defendants' legitimate, non-discriminatory business reasons for formulating and implementing the 2019 Reassignment Process, including the practices challenged by Plaintiffs, were pretextual.  For the aforementioned reasons, the unrebutted evidence similarly shows that Plaintiffs cannot prevail on their Section 1983 claim against Dr. Bulson.

Lastly, the Court observes that the evidence in this case is sufficient to show that the outcome of the 2019 Reassignment Process created an inference that African American women over the age of 40 were treated disparately during that hiring process.  Given this, Plaintiffs' disappointment and concerns about outcome of the 2019 Reassignment Process is understandable.  But, Plaintiffs must do more than establish an inference of discrimination to

prevail on their claims in this case.  Because the evidence before the Court makes clear that Plaintiffs cannot do so, the Court must deny their claims.

And so, for these reasons, the Court:

(1) **GRANTS** the Defendants' motion for summary judgment; and

(2) **DISMISSES** the complaint.

A separate Order shall issue.


**IT IS SO ORDERED.**


s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge